**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2073
_____

BERNARDO CASTILLO,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                              Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A090-260-288)
Immigration Judge: Honorable Henry S. Dogin
_____

Argued May 30, 2013

BEFORE:  JORDAN, VANASKIE and COWEN,
Circuit Judges

(Filed: September 03, 2013)

Micaela M. Alvarez, Esq.
Francis X. Geier, Esq. (Argued)
Law Office of Micaela M. Alvarez
416-36th Street, Suite 1
Union City, NJ 07087

     *Counsel for Petitioner*

Eric H. Holder, Jr., Esq.
Thomas W. Hussey, Esq.
Suzanne Nicole Nardone, Esq. (Argued)
Margaret A. O'Donnell, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Jamie M. Dowd, Esq.
United States Department of Justice
Office of Immigration Litigation
450 5th Street, N.W., Rm. 5206
Washington, DC 20001

     *Counsel for Respondent*

_____

OPINION

_____

COWEN, <u>Circuit Judge</u>.

This immigration matter has already been before this Court once before on a petition for review. Bernardo Castillo previously petitioned for review of a decision of the Board of Immigration Appeals ("BIA"), which dismissed his appeal from an order of the Immigration Judge ("IJ") denying his application for cancellation of removal pursuant to 8 U.S.C. 1229b(a). Granting his petition, we remanded this matter to the BIA for it to determine whether Castillo—who was found guilty by a municipal court of shoplifting, a disorderly persons offense under New Jersey law—was thereby "'convicted of [a] crime[ ]'" within the meaning of 8 U.S.C. § 1227(a)(2)(A)(ii). On remand, the BIA concluded that this finding of guilt constituted a conviction under 8 U.S.C. § 1101(a)(48)(A) and, therefore, a crime under § 1227(a)(2)(A)(ii). The BIA accordingly dismissed Castillo's administrative appeal, and Castillo filed another petition for review. For the second time in this case, we will grant his petition for review and remand for further proceedings consistent with this opinion.

I.

Castillo is a native and citizen of Peru. He entered the United States without inspection in 1985, became a temporary resident in 1988, and adjusted his status to lawful permanent residency in 1990. On September 31, 1994, the East Brunswick Municipal Court found Castillo guilty of shoplifting in violation of N.J. Stat. Ann. § 2C:20-11. Castillo evidently was represented by an attorney and entered

3

a guilty plea to this offense. He was ordered to pay a $200 fine, together with costs in the amount of $55 as well as $81 in various fees. In 1989, Castillo was convicted in a New Jersey court of receiving stolen property. He was subsequently convicted, on three separate occasions, on charges of receiving stolen property and, on one occasion, on a charge of contempt.

Castillo admitted his criminal history and conceded removability, while requesting relief from removal on a number of grounds. Specifically, he claimed that he was eligible for cancellation of removal pursuant to § 1229b(a). Section 1229b(a) provides that the Attorney General may cancel the removal of an alien who, inter alia, has "resided in the United States continuously for 7 years after having been admitted in any status." Continuous residence, however, ends "when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien . . . removable from the United States under section 1227(a)(2) . . . of this title." 8 U.S.C. § 1229b(d)(1)(B). "Under 8 U.S.C. § 1227(a)(2)(A)(ii), an alien is removable, *inter alia*, if he 'is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct.'" Castillo v. Attorney General, 411 F. App'x 500, 501 (3d Cir. 2011).

The IJ denied relief and ordered Castillo's removal. According to the IJ, "his criminal history . . . reveals a conviction for shoplifting" in 1994 as well as a 1989 conviction for receiving stolen property. (A26.) The IJ said that "a conviction for shoplifting, even if categorized as a

4

disorderly persons offense, can be considered a conviction for a crime involving moral turpitude," which, together with the 1989 conviction, rendered Castillo removable and ended his continuous physical presence short of the requisite 7-year period. (Id.)

The BIA dismissed Castillo's appeal in a single-member decision dated May 6, 2009. The agency concluded that "the Immigration Judge's determination that the respondent's 1994 conviction constitutes a crime involving moral turpitude is supported by the record." (A12.) It specifically rejected Castillo's theory that his shoplifting offense should be considered a disorderly persons offense—rather than a crime:

> Under N.J. Stat. Ann. § 2C:2-11(c), there are 4 gradations of shoplifting offenses. Three are crimes and one is a disorderly persons offense. The respondent has the burden of establishing his eligibility for any requested relief from removal. See 8 C.F.R. § 1240.8(d). If the evidence indicates (as is the case here) that one or more grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply. Id. As there is no evidence in this case that the respondent's shoplifting offense was prosecuted as a disorderly persons offense rather than a crime, the respondent has not met his burden of

5

establishing that he is eligible for cancellation of removal under [§ 1229b(a)].

(A12-A13.) In a footnote, the BIA acknowledged that Castillo cited to its prior decision in In re Eslamizar, 23 I. & N. Dec. 684 (BIA 2004) (en banc), but observed that "there was evidence in [Eslamizar] establishing that a prosecutor had elected to treat the offense at issue as something other than a crime," and "[s]uch evidence is lacking in this case." (A12 n.1.)

Castillo filed a petition for review with this Court. In a January 11, 2011 order, we granted his petition for review and remanded this matter to the BIA for further proceedings consistent with our opinion.

In his previous petition, Castillo asserted that "the BIA erred in ruling that his shoplifting conviction was for a 'crime' because under New Jersey law at the time, shoplifting was not a 'crime,' but rather 'a disorderly persons offense.'" Castillo, 411 F. App'x at 502 (quoting N.J. Stat. Ann. § 2C:20-11(c) (1994)). He therefore pointed out that under 1994 New Jersey law: (1) disorderly persons offenses were petty offenses—and not crimes within the meaning of the New Jersey Constitution; (2) there was no right to a trial by jury or to an indictment by a grand jury; (3) a conviction did not give rise to any disability or legal disadvantage; and (4) "[i]n carrying its burden of proving the element of the disorderly persons offense of shoplifting that the defendant intended to deprive the merchant of possession, the state is aided by a presumption arising from intentional concealed

possession of merchandise while on the merchant's property," id. (citing N.J. Stat. Ann. § 2C:20-11(d) (1994)). Castillo also relied on the BIA's decision in Eslamizar, "in which the respondent had been found guilty of a 'violation' of an Oregon statute prohibiting shoplifting." Id. We provided the following summary of that agency decision:

> Oregon law defined "crimes" and "violations" in mutually exclusive terms, and conviction of a "violation" did "not give rise to any disability or legal disadvantage based on conviction of a crime." [Eslamizar, 23 I. & N. Dec. at 687]. Under its law, prosecutions of "violations" involved proceedings which differed from those in criminal proceedings in that, among other things, the state needed only to prove guilt by a preponderance of the evidence. Id. The IJ concluded that the "Oregon judgment issued against the respondent did not qualify as a 'conviction' for a 'crime' that could give rise to immigration consequences." Id. at 685. The BIA agreed with this conclusion. Id. n. 2. Its analysis placed primary emphasis on the INA [Immigration and Nationality Act] definition of "conviction" found in 8 U.S.C. § 1101(a)(48)(A). While acknowledging that the respondent had been "convicted" under the literal reading of that statutory definition, the BIA ultimately concluded that "by 'judgment of guilt' Congress most likely intended to refer to a judgment *in a criminal proceeding*, that is, a

7

trial or other proceeding whose purpose is to determine whether the accused committed a crime and which provides the constitutional safeguards normally attendant upon criminal adjudication." Id. at 687 (italics in original). The judgment against the respondent was found not to meet this understanding of the phrase "judgment of guilt." The BIA did not speak further on whether the respondent had committed a "crime" that could give rise to immigration consequences.

Id. (footnote omitted).

We then pointed out that the BIA in Castillo's case failed to reach the issue of whether he "was 'convicted of [a] crime[ ]'" under § 1227(a)(2)(A)(ii) because "it applied the then current version of the New Jersey statute rather than the version in effect at the time of Castillo's offense." Id. at 503. In 1994, all four gradations of shoplifting were disorderly persons offenses. We accordingly could not sustain the BIA's decision based on its own stated rationale.

In short, "[t]here is no doubt that Castillo was found guilty of a disorderly persons offense and the issue of whether that constitutes being 'convicted of [a] crime[ ]' within the meaning of § 1227(a)(2)(A)(ii) cannot be avoided." Id. However, this Court declined to address this question in the first instance because "it is an issue of some substance" and "we owe Chevron deference to the BIA's reading of the statutes whose execution it oversees." Id. We thus remanded

8

"to secure the benefit of the BIA's understanding of the phrase 'convicted of [a] crime[ ]' as used in § 1227(a)(2)(A)(ii)." Id.

While indicating that Castillo's due process theory, which tracked the foregoing statutory construction argument, "should await the disposition of that statutory argument," we did reject the government's assertion that the application of the 2006 version of the state statute constituted harmless error:

> While it is true that 8 U.S.C. § 1101(a)(48)(A) defines the term "conviction" for purposes of the INA and that the definition is "not dependent on the vagaries of state law," Appellee's Br. at 21 n. 7, the issue posed by Castillo turns on whether he was "convicted of [a] crime[ ]" within the meaning of 8 U.S.C. § 1227(a)(2)(A)(ii). That is clearly a question of federal, not state law, but it is not one directly answered in the INA or the BIA's opinion in Eslamizar. While the statutory definition of "conviction" may be found to assist in the analysis, even given that definition, one must still ask "conviction" of what.

Id.

The BIA, in a single-member decision dated March 29, 2012, purportedly responded to this Court's request that "we address whether the respondent's conviction in this case

9

constitutes a 'crime' for purposes of [§ 1227(a)(2)(A)(ii)]." (A5.) The BIA, for a second time, affirmed the IJ's decision and dismissed Castillo's appeal. It did so based on the following grounds:

> In Matter of Eslamizar, 23 I&N Dec. 684 (BIA 2004), we found that the respondent's conviction for third-degree theft under Oregon law did not qualify as a conviction for a crime under [§ 1227(a)(2)(A)(ii)] because it did not qualify as a "conviction" under [§ 1101(a)(48)(A)]. We determined that, in order for an offense to qualify as a criminal conviction pursuant to [§ 1101(a)(48)(A)], the elements of such offense must be proved beyond a reasonable doubt. In Matter of Eslamizar, supra, the theft offense at issue only required the State to prove the defendant's violation by a preponderance of the evidence.
>
> In order for the shoplifting offense at issue in the instant case to constitute a "crime" under [§ 1227(a)(2)(A)(ii)], the elements of such offense must be proved beyond a reasonable doubt and the conviction for such offense must constitute a "conviction" under [§ 1101(a)(48)(A)]. See Matter of Eslamizar, supra; see also Matter of Rivera-Valencia, 24 I&N Dec. 484 (BIA 2008) (finding an adjudication of guilt, proved beyond a reasonable doubt, by a general court-martial

10

qualified as a conviction under [§ 1101(a)(48)(A)]); Matter of Calvera, 24 I&N Dec 459 (BIA 2008) (holding that costs and surcharges constitute a penalty for purposes of establishing a conviction). Contrary to the respondent's assertions, whether New Jersey considers his offense to be a "crime" is not relevant. Matter of G-, 7 I&N Dec. 520 (BIA 1957). The question is whether Congress would have intended the offense to constitute a crime under the Act. Unlike the statute in Matter of Eslamizar, supra, the shoplifting statue at issue in this case requires the State to demonstrate the elements of the offense beyond a reasonable doubt. See N.J. STAT. ANN. § 2c:20-11 (1994); see also State v. Goodmann, 390 N.J.Super. 259 (2007) (holding that the New Jersey shoplifting statute requires the State to demonstrate beyond a reasonable doubt the elements of the offense). Thus, the respondent's shoplifting violation constitutes a conviction under [§ 1101(a)(48)(A)] and therefore a crime under [§ 1227(a)(2)(A)(ii)]. See Hussein v. U.S. Att'y Gen., 413 Fed. Appx. 431 (3d Cir. 2010) (unpublished) (finding disorderly persons offense to be "conviction" due to imposition of "beyond a reasonable doubt" standard). . . .

(A6.)

11

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252. This Court reviews the BIA's legal determinations de novo, "subject to the principles of deference articulated in" Chevron U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984). Briseno-Flores v. Attorney General, 492 F.3d 226, 228 (3d Cir. 2007) (citing Wang v. Ashcroft, 368 F.3d 347, 349 (3d Cir. 2004)). Under this doctrine, the Court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. See, e.g., Acosta v. Ashcroft, 341 F.3d 218, 222 (3d Cir. 2003). "On the other hand, 'if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" Id. (quoting Chevron, 467 U.S. at 843). "In its interpretation of the INA, 'the BIA should be afforded Chevron deference as it gives ambiguous statutory terms "concrete meaning through a process of case-by-case adjudication."'" Id. (quoting INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999)). "[W]here an agency interpretation reflects an impermissible construction of the statute, we will not defer to the agency's view." Jean-Louis v. Attorney General, 582 F.3d 462, 472 n.12 (3d Cir. 2009) (citations omitted). Moreover, "we owe no deference to the [administrative] interpretation of a state criminal statute." Partyka v. Attorney General, 417 F.3d 408, 411 (3d Cir. 2005) (citing Knapik v. Ashcroft, 384 F.3d 84, 88 (3d Cir. 2004)). The reasonableness of an agency's statutory interpretation is dependent in part on the consistency with which the interpretation is advanced. See, e.g., Valdiviezo-

12

<u>Galdamez v. Attorney General</u>, 663 F.3d 582, 604 (3d Cir. 2011).

## III.

We remanded this matter specifically "to secure the benefit of the BIA's understanding of the phrase 'convicted of [a] crime[ ]' as used in § 1227(a)(2)(A)(ii)." <u>Castillo</u>, 411 F. App'x at 503. With respect to <u>Eslamizar</u>, we noted that the BIA focused on the statutory definition of the term "conviction" found in § 1101(a)(48)(A), <u>id.</u> at 502, and explained that the question of whether Castillo was "'convicted of [a] crime[ ]'" pursuant to § 1227(a)(2)(A)(ii) was not "directly answered in the INA or the BIA's opinion in <u>Eslamizar</u>," <u>id.</u> at 503. We observed that, "[w]hile the statutory definition of 'conviction' may be found to assist in the analysis, even given that definition, one must still ask 'conviction' of what." <u>Id.</u> However, the BIA on remand turned to <u>Eslamizar</u> and its reading of § 1101(a)(48)(A) in order to decide "whether the respondent's conviction in this case constitutes a 'crime' for purposes of [§ 1227(a)(2)(A)(ii)]." (A5.) It then concluded that "the respondent's shoplifting violation constitutes a conviction

13

under [§ 1101(a)(48)(A)] and therefore a crime under [§ 1227(a)(2)(A)(ii)]."[1]  (A6 (citation omitted).)

Castillo, for his part, does not take issue with the BIA's basic approach to §§ 1101(a)(48)(A) and 1227(a)(2)(A)(ii).  On the contrary, he specifically argues that the BIA committed reversible error—and even "violated its own precedential decision in [Eslamizar]"—by concluding that the finding of guilt at issue in this matter was a conviction under § 1101(a)(48)(A).  (Petitioner's Brief at 19.)  Accordingly, we turn to § 1101(a)(48)(A) and the agency's decision in Eslamizar.

---

[1]   Having ignored our request that it "still ask 'conviction' of what," Castillo, 411 F. App'x at 503, the BIA seems to have construed the INA to mean that any offense for which there is a conviction as defined in the statute must necessarily be a crime.  But the INA itself evidently distinguishes crimes from non-criminal violations, providing, for example, that an alien is inadmissible if he or she is convicted of "a crime involving moral turpitude," 8 U.S.C. § 1182(a)(2)(A)(i)(I), or of a ""violation . . . relating to a controlled substance," id. § 1182(a)(2)(A)(i)(II).  Nevertheless, for purposes of this discussion, we assume that the same factors that establish whether an alien has suffered a conviction as defined in § 1101(a)(48)(A) determine whether the offense of conviction is a crime for purposes of the INA.  As we note hereafter, however, we anticipate that the question left open from our last remand—"'conviction' of what"—will be answered upon remand this time.

14

Section 1101(a)(48)(A) states that:

The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

This statutory definition was added to the INA as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. In re Rivera-Valencia, 24 I. & N. Dec. 484, 487 (BIA 2008).

Eslamizar was charged with theft in the third degree in violation of Oregon state law. Eslamizar, 23 I. & N. Dec. at 685. "Although the offense qualified as a misdemeanor and was initially charged as such, Oregon law allowed the prosecuting attorney to amend the accusatory pleading so as to 'treat' the offense as a 'Class A violation' rather than as a misdemeanor." Id. (footnote omitted) (citation omitted). This election was made, and Eslamizar's trial was conducted in accordance with an Oregon statutory provision that

15

"provides for proceedings that differ from conventional criminal prosecutions in that, among other things, the State need only prove guilt 'by a preponderance of the evidence,' rather than 'beyond a reasonable doubt.'" Id. He was found guilty and sentenced to pay a nominal fine as well as various financial assessments. Id. Given a previous misdemeanor theft conviction, Eslamizar was charged as removable on the grounds that he was an alien convicted of two or more crimes involving moral turpitude pursuant to § 1227(a)(2)(A)(ii). Id. The IJ "concluded that the September 3, 1999, Oregon judgment issued against the respondent did not qualify as a 'conviction' for a 'crime' that could rise to immigration consequences, because the proceedings in which that judgment was entered did not afford the respondent many of the constitutional safeguards generally required for criminal prosecutions." Id. at 685-86.

The BIA originally sustained the government's appeal, holding that the Oregon judgment was a conviction under the plain language of § 1101(a)(48)(A). Id. at 686. In doing so, it cited to an Oregon Supreme Court opinion, which held that proof beyond a reasonable doubt was always required. Id. However, that opinion was superseded by a state statute. Id. "Because of this crucial factual error regarding the requirements of Oregon law, as applicable to the respondent's case, we reconsider our prior decision in full, and as previously indicated, we arrive at a different legal conclusion." Id.

According to the agency, "[t]he issue in [Eslamizar] is whether a judgment of guilt entered against the respondent in

16

a proceeding conducted pursuant to section 153.076 of the Oregon Revised Statues constitutes a 'conviction' for immigration purposes." Id. On reconsideration, the BIA—in a 9-2 en banc decision—ultimately answered this question in the negative. Id. at 689.

In doing so, the BIA began with the language of § 1101(a)(48)(A) itself, which defined "the term 'conviction' as 'a formal judgment of guilt of the alien entered by a court.'" Id. at 686. The Oregon circuit court had issued a formal judgment finding Eslamizar guilty of the offense of third-degree theft. Id. The BIA said that, "[a]lthough a literal reading of the conviction definition persuaded us earlier that the respondent's offense was a 'conviction' for immigration purposes, on reconsideration we do not find the definition to be clear or to dictate such an outcome." Id. at 686-87. In particular, the earlier supposed clarity actually rested on the assumption that, by using "the phrase 'judgment of guilt,'" "Congress meant only that the adjudicative finding of a court must carry the label 'guilt' or 'guilty.'" Id. at 687. Such a reading represented an unlikely construction given its consequences. Id. Specifically, "it would mean that if a State has so denominated, or in the future should so denominate, a *civil* judgment, e.g., one for an intentional tort or for conduct that results in a judgment to pay a civil fine or punitive damages, such a judgment would evidently qualify as a 'conviction' for immigration purposes." Id. Although some civil sanctions could be punitive in nature (and even trigger the Double Jeopardy Clause), the BIA in Eslamizar doubted that Congress "had so expansive a reach in mind" given the

17

absence of any persuasive evidence to support such a reading. Id.

The BIA therefore "adopt[ed]" what it called "a far more sensible reading" of § 1101(A)(48)(A):

> Moreover, a far more sensible reading of the statute exists: namely, that by "judgment of guilt" Congress most likely intended to refer to a judgment *in a criminal proceeding*, that is, a trial or other proceeding whose purpose is to determine whether the accused committed a crime and which provides the constitutional safeguards normally attendant upon a criminal adjudication. Such a meaning, which we adopt, is consistent with the ordinary connotation of the term "guilt," especially in the context of a definition of the term "conviction."

Id.

The agency then provided a summary of the state law that applied to Eslamizar's trial. Id. On the one hand, the BIA recognized that Oregon law "uses the label 'criminal' to describe the hybrid 'violation' adjudication proceedings," such trials were subject to the criminal procedure laws of the Oregon, and the defendant possessed the rights to confront his or her accusers, file an appeal, and hear the evidence of witnesses in open court. Id. (citations omitted). On the other hand:

18

. . . Oregon's offense classification system defines "crimes" and "violations" in mutually exclusive terms, stating that "[a]n offense is either a crime . . . or a violation." Oregon law further provides that "[c]onviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime." Moreover, pursuant to section 153.076 of the Oregon Revised Statutes, violation proceedings are tried to the court sitting without a jury, the defendant need not be provided counsel at public expense, and the State need only prove the defendant's violation by a preponderance of the evidence. Significantly, the Oregon Court of Appeals in State v. Rode concluded that the conduct of a defendant whose misdemeanor offense was prosecuted as a violation "was not a crime, and the prosecution of the conduct was not a criminal prosecution."

Id. (citations omitted).

The BIA then stated that "[i]t is a bedrock principle of the Constitution of the United States that each element of an offense or crime must be proved beyond a reasonable doubt." Id. at 688 (footnote omitted) (citing Apprendi v. New Jersey, 530 U.S. 466 (2000); In re Winship, 397 U.S. 358 (1970)). It then added the following footnote to its statement of a "bedrock principle":

19

The respondent's "violation" carried a maximum penalty of a fine. As such, if it were to be regarded as a crime, it would fall, for constitutional purposes, into the category of a "petty offense," a species of misdemeanor that is punishable by a maximum of 6 months imprisonment and a fine of uncertain dimension, but probably not extending beyond $5,000 for individuals. See 18 U.S.C. § 19 (2000). The Supreme Court has held that petty offenses do not carry the right to jury trial and, if no imprisonment will or may be imposed, may also dispense with the right to appointed counsel. E.g., Lewis v. United States, 518 U.S. 322 (1996); Scott v. Illinois, 440 U.S. 367 (1979). But we are unaware of any decision of that Court or any other holding that the standard of proof for conviction of even a petty offense may deviate below the level of "beyond a reasonable doubt."

Id. at 688 n.4. According to the BIA, "[i]t is beyond debate, therefore, that the respondent, who was found 'guilty' under the lesser standard of a preponderance of the evidence was not found guilty of his 'violation' in a true criminal proceeding." Id. at 688.

The BIA went on to explain that there was nothing in the legislative history "to show that Congress intended anything by the phrase 'judgment of guilt' other than the normal and traditional meaning of a judgment entered in a

20

genuine criminal proceeding." Id. (footnote omitted). On the contrary, Congress was primarily, if not exclusively, concerned with the effect of post-proceeding rehabilitative actions. Id. at 668 n.5. Noting that its decision should not be read as asserting that a foreign conviction must adhere to all the constitutional requirements applicable to criminal trials, including the requisite standard of proof, the BIA summarized its finding in the following terms: "Rather we find that Congress intended that the proceeding must, at a minimum, be criminal in nature under the governing laws of the prosecuting jurisdiction, whether that may be in this country or in a foreign one." Id. Finally, the BIA indicated that, to the extent its decision in In re C-R-, 8 I. & N. Dec. 59 (BIA 1958) (holding that police court adjudication of petty theft in violation of municipal ordinance under preponderance of evidence standard constituted conviction), may be viewed as inconsistent, that prior decision was overruled. Eslamizar, 23 I. & N. Dec. at 689.

In the present case, we are faced with serious disagreement as to what considerations or factors may be relevant in deciding whether a finding of guilt constitutes a conviction under Eslamizar and § 1101(a)(48)(A). Both the BIA and the government have distinguished Eslamizar on the grounds that New Jersey law—unlike Oregon law—required proof beyond a reasonable doubt. In short, the finding of guilt at issue here purportedly constituted a conviction under § 1101(a)(48)(A) because the municipal court entered a formal judgment of guilt under a "reasonable doubt" standard of proof and ordered Castillo to pay a fine as a form of punishment. However, Castillo claims that the BIA violated

21

its own precedent in Eslamizar, which "outlined a series of factors that must be considered in determining whether an alien's judgment qualifies as a conviction [under § 1227(a)(2)(A)(ii)], including but not limited to whether the sanctions resulting from such a conviction are punitive, whether the alien was provided with the constitutional safeguards normally attendant to a criminal adjudication, and whether a conviction for the offense gives rise to any disability or legal disadvantage based on conviction of a crime." (Petitioner's Brief at 20 (citations omitted).) As we recognized in our prior opinion in this matter, New Jersey law provided in 1994 that: (1) disorderly persons offenses, such as shoplifting, constituted "'petty offenses,'" as opposed to "'crimes within the meaning of the Constitution of this State;'" (2) "'[t]here shall be no right to indictment by a grand jury nor any right to trial by jury on' disorderly persons offenses;" and (3) "[c]onviction of such offenses shall not give rise to any disability or legal disadvantage.'" Castillo, 411 F. App'x at 502 (quoting § 2C:1-4(b)). According to Castillo, "Defendants charged with disorderly persons offenses [also] have no blanket right to counsel." (Id. at 29-30 (citing § 2C:1-4(b)).

Simply put, we find the Eslamizar decision itself to be difficult to understand. We acknowledge, for example, that the BIA emphasized what it called a "bedrock principle" of constitutional law—the requirement that each and every element of an offense must be proved beyond a reasonable doubt. See Eslamizar, 23 I. & N. Dec. at 688 (footnote omitted) (citations omitted). In turn, it arguably drew a distinction between this applicable standard of proof and

22

other procedural considerations, such as the right to a jury trial or the right to appointed counsel. Id. at 688 n.4. We further note that the interpretation of Eslamizar and § 1101(a)(48)(A) proffered by the government does seem relatively simple to apply, i.e., instead of conducting an open-ended multi-factor analysis, the decision maker simply considers whether a court entered a formal judgment of guilt under the "reasonable doubt" standard of proof and imposed some form of punishment. More broadly, it is uncontested that "the INA's definition of a 'crime' and a 'conviction' controls the determination of whether a finding of guilt for an offense is considered a 'conviction for a crime.'" (Petitioner's Brief at 30.)

Nevertheless, we believe that Castillo generally offers the more persuasive interpretation of Eslamizar and § 1101(a)(48)(A). We reach this conclusion based on the language and reasoning of this difficult decision. We also look to subsequent precedential and non-precedential BIA decisions purportedly applying Eslamizar. Some of these decisions actually appear to weigh in favor of Castillo's interpretation. At the very least, it is clear that, far from clarifying a problematic en banc decision, the agency has approached its own decision in an inconsistent fashion.

In Eslamizar, the BIA expressly rejected a literal reading of the term "conviction." Id. at 687. On the contrary, it stated that "a far more sensible reading of the statute exists, namely, that by 'judgment of guilt' Congress most likely intended to refer to a judgment *in a criminal proceeding*, that is, a trial or proceeding whose purpose is to determine

23

whether the accused committed a crime and which provides the constitutional safeguards normally attendant upon a criminal adjudication." Id. This reading, "which we adopt," did not expressly reference the applicable standard of proof. Id. In turn, the BIA generally referred to "a true criminal proceeding," "the normal and traditional meaning of a judgment entered in a genuine criminal proceeding," and a proceeding that, at a minimum, is "criminal in nature under the governing laws of the prosecuting jurisdiction, whether that may be in this country or in a foreign one." Id. at 688 (footnotes omitted). The agency also provided a full summary of Oregon law, including the state's definition of crimes and violations in mutually exclusive terms, a statutory provision stating that a conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime, and another state statutory section providing that violation proceedings are tried by a court sitting without a jury and without counsel being provided at public expense.[2] Id. at 687.

---

[2] We likewise did not really emphasize the applicable standard of proof in our prior opinion in this matter. In summarizing Eslamizar, we instead pointed to other aspects of Oregon state law (i.e., its mutually exclusive definitions and the absence of any disability or legal disadvantage) and highlighted the BIA's "understanding of the phrase 'judgment of guilt'" as a "'judgment *in a criminal proceeding*, that is, a trial or other proceeding whose purpose is to determine whether the accused committed a crime and which provides the constitutional safeguards normally attendant upon criminal adjudication.'" Castillo, 411 F. App'x at 502

24

Accordingly, we generally view Eslamizar as setting forth a general "criminal proceeding" approach to § 1101(a)(48)(A). Because it is a "bedrock principle" that each element of a crime must be proven beyond a reasonable doubt, a finding of guilt under a lesser standard could never be considered as a judgment in "a true criminal proceeding." Id. at 688 (footnote omitted) (citation omitted). The "reasonable doubt" standard of proof thereby represents a necessary condition for satisfying the BIA's "criminal proceeding" reading. However, this does not mean that a judgment was entered in a true or genuine criminal proceeding—and therefore constituted a conviction pursuant to § 1101(a)(48)(A)—merely because a court entered a formal judgment of guilt under the requisite "reasonable doubt" standard of proof and imposed a form of punishment. The "criminal proceeding" approach appears to contemplate a more "open-ended" inquiry before a decision maker can conclude that § 1101(a)(48)(A) has been satisfied. The BIA accordingly indicated that there are several other factors that may be relevant in deciding if the judgment was entered in a true or genuine criminal proceeding, including how the prosecuting jurisdiction characterized the offense at issue, the consequences of a finding of guilt, and the rights available to the accused as well as any other characteristics of the proceeding itself. At the very least, such factors appear to be

_____

(quoting Eslamizar, 23 I. & N. Dec. at 687)). With respect to the standard of proof, we stated that Oregon's violation proceedings differed from criminal proceedings because, "among other things," the state was required only to prove guilt by a preponderance of the evidence. Id.

25

relevant to the determination of whether the proceeding's "purpose is to determine whether the accused committed a crime" and if it "provides the constitutional safeguards normally attendant upon a criminal adjudication." Id. at 687.

Furthermore, this interpretation of Eslamizar has some support in subsequent decisions by the BIA. We begin with an unpublished single-member decision indicating that a judgment did not constitute a conviction, despite the fact that the prosecution had to prove the elements of the offense beyond a reasonable doubt.

In In re Bajric, A077 686 506, 2010 WL 5173974 (BIA Nov. 30, 2010) (unpublished decision), the agency sustained an appeal from a bond decision filed by an alien who was convicted in a Missouri municipal court of stealing in violation of a municipal ordinance. Id. In deciding if this judgment was a conviction under § 1101(a)(48)(A), the BIA turned to Eslamizar. Id. While emphasizing the standard of proof and noting that certain constitutional protections, such as the right to a jury trial, need not be afforded in petty offense cases, the BIA "also recognized several other factors to be considered in determining whether a judgment would qualify as a "conviction" for immigration purposes." Id. "These include, but are not limited to, whether the sanctions resulting from such a conviction are punitive, whether there are constitutional safeguards normally attendant to a criminal adjudication, and whether a conviction for a municipal violation gives rise to any disability or legal disadvantage based on conviction of a crime." Id. The BIA explained that, "[a]lthough the respondent's 2008 municipal violation was

26

quasi-criminal in that each element had to be proven beyond a reasonable doubt, his municipal violation clearly remained civil in nature in that it did not bar a prosecution for the same offense by the state, and his conviction for a violation of a municipal ordinance, unlike those for misdemeanors and felonies, is not admissible for impeachment purposes." Id. Because this municipal violation did not appear to meet the statutory definition under § 1101(a)(48)(A), the BIA believed that it was substantially unlikely that the government could establish that the alien was subject to mandatory detention on account of his conviction for two or more crimes involving moral turpitude. Id.

In the decision now under review, the BIA cited to In re Rivera-Valencia, 24 I. & N. Dec. 484 (BIA 2008), which determined that "an adjudication of guilt [of the offense of carnal knowledge], proved beyond a reasonable doubt, by a general court-martial qualified as a conviction under [§ 1101(a)(48)(A)]." (A6.) In this published 3-member decision, the BIA turned to Eslamizar and explained that a court's formal judgment of guilt falls within the language of §1101(a)(48)(A) if it was entered in a "'genuine criminal proceeding,'" i.e., "a proceeding that is 'criminal in nature under the governing laws of the prosecuting jurisdiction.'" Id. at 486-87 (quoting Eslamizar, 23 I. & N. Dec. at 688). According to the agency, the alien's guilt was determined in a genuine criminal proceeding because the proceeding at issue was criminal in nature under the laws of the prosecuting jurisdiction, the United States Armed Forces. Id. at 487. Specifically, "there is no dispute that a general court-martial is a 'criminal proceeding under the governing laws of the

27

United States Armed Forces, and the respondent's general court-martial unquestionably resulted in the entry of a formal judgment of his 'guilt' beyond a reasonable doubt." Id. (citations omitted). Likewise, "a trial by court-martial does not infringe on the constitutional rights of an accused who is properly subject to military jurisdiction, despite the absence of some protections afforded civilian defendants, such as the right to a trial by jury." Id. (citations omitted) (footnote omitted). The BIA emphasized that the protections of the Bill of Rights were available to members of the Armed Forces (except for those protections that were expressly or by implication inapplicable in this context), and service members thereby were accorded many of the same procedural rights as their civilian counterparts (e.g., the privilege against compulsory self-incrimination, the right to representation by counsel at public expense, and the right to call witnesses and present evidence). Id. at 487 n.2. As part of its "genuine criminal proceeding" analysis in Rivera-Valencia, the BIA thereby considered whether the proceeding at issue was a criminal proceeding under the laws of the prosecuting jurisdiction itself and specifically relied on considerations other than the applicable standard of proof.

In In re Cuellar-Gomez, 25 I. & N. Dec. 850 (BIA 2012), a 3-member panel then applied Rivera-Valencia—and Eslamizar—to a judgment entered by a Kansas municipal court finding the alien guilty of violating a city ordinance prohibiting the possession of marijuana, id. at 852-55. "Under our precedents, a formal judgment of guilt entered by a court qualifies as a conviction under [§ 1101(a)(48)(A)] so long as it was entered in a 'genuine criminal proceeding,' that

28

is, a proceeding that was criminal in nature under the governing laws of the prosecuting jurisdiction.'" Id. at 852-53 (quoting Rivera-Valencia, 24 I. & N. Dec. at 486-87. According to the BIA, the judgment at issue was entered in a genuine criminal proceeding under the laws of Kansas because municipal court judges possessed the power to enter judgments of guilt and impose fines or incarceration in marijuana possession cases, the prosecution was required to prove the charge beyond a reasonable doubt, and the judgment of guilt represented a conviction for purposes of calculating a defendant's criminal history. Id. The agency further rejected the alien's specific contentions regarding the absence of an absolute right to be represented by appointed counsel (purportedly unlike the approach to appointment of counsel used in the state's district courts) as well as the lack of a right to a jury trial. Id. at 853-54. Specifically, the BIA concluded that the municipal court trial qualified as a genuine criminal proceeding because, "[i]f the municipal court finds the defendant guilty, the defendant then has a constitutional and statutory right to appeal to a State district court for a trial de novo before a jury." Id. at 854 (citations omitted). In any case, the BIA looked to Kansas state law in order to determine whether the judgment was entered in a genuine criminal proceeding under the laws of the prosecuting jurisdiction and, in turn, considered more than the applicable standard of proof. The agency also noted that it did "not purport to address municipal or local judgments other than the particular Wichita judgment before us." Id. at 855 n.3. "Because such judgments vary widely across jurisdictions, each must be examined on its own merits." Id.

29

"'Agencies are not free, under <u>Chevron</u>, to generate erratic, irreconcilable interpretations of their governing statutes.'" <u>Valdiviezo-Galdamez</u>, 663 F.3d at 604 (quoting <u>Marmolejo-Campos v. Holder</u>, 558 F.3d 903, 920 (9th Cir. 2009) (Berzon, J., dissenting)). Accordingly, "'[c]onsistency over time and across subjects is a relevant factor [under <u>Chevron</u>] when deciding whether the agency's current interpretation is 'reasonable.'" <u>Id.</u> (quoting <u>Marmolejo-Campos</u>, 558 F.3d at 920 (Berzon, J., dissenting)). While it can change its own policies, the BIA acts arbitrarily if it does so without proffering a principled reason or explanation. <u>See, e.g.</u> <u>id.</u> at 608.

According to the government, the BIA's interpretation of what constitutes a crime under the INA is entitled to deference, and we should defer to its legal conclusion in this matter. However, we do not believe that <u>Chevron</u> deference would be appropriate in light of our discussion of <u>Eslamizar</u> as well as subsequent BIA case law.[3] At the very least, the non-precedential decision in <u>Bajric</u> and the precedential decisions in <u>Rivera-Valencia</u> and <u>Cuellar-Gomez</u> weigh in favor of our interpretation of <u>Eslamizar</u> and a general "criminal proceeding" approach to § 1101(a)(48)(A). We do acknowledge that, in two unpublished single-member

---

[3] We therefore need not—and do not—reach the question of whether we could accord <u>Chevron</u> deference to an unpublished decision by a single member of the BIA, <u>see, e.g.</u>, <u>De Leon v. Attorney General</u>, 622 F.3d 341, 348-51 (3d Cir. 2010) (refusing to decide whether such decisions are entitled to deference under <u>Chevron</u>).

30

decisions addressing shoplifting offenses under New Jersey law, the BIA apparently concluded that such offenses were convictions under § 1101(a)(48)(1) and Eslamizar merely because the respective aliens were found guilty under a "reasonable doubt" standard of proof (and were ordered to pay fines). See In re Delgado, A13 924 138, 2008 WL 762624 (BIA Mar. 11, 2008) (unpublished decision), petition for review denied sub nom. Delgado v. Attorney General, 349 F. App'x 809 (3d Cir. 2009) (per curiam); In re Dilone, A44 476 837, 2007 WL 2463936 (BIA Aug. 6, 2007) (unpublished decision). The BIA, to date, has offered no attempt to reconcile, reject, or otherwise explain its inconsistent decisions. In fact, it has not even recognized that there may be a problem with its own decisions in the present context. We therefore are confronted here with a clear case of "erratic, irreconcilable interpretations.'"[4] Valdiviezo-Galdamez, 663 F.3d at 604 (citation omitted).

---

[4] The BIA and the government have also turned for support to non-precedential case law from this Court. In Hussein v. Attorney General, 413 F. App'x 431 (3d Cir. 2010), the alien pled guilty before a New Jersey court of possession of drug paraphernalia, a disorderly persons offense under New Jersey law, id. at 432. We concluded that it was not unreasonable for the BIA to determine that this offense qualified as a conviction under § 1101(a)(48)(A) because the government had the burden of proving every element beyond a reasonable doubt, the alien willingly pled guilty, and the judge sentenced him to serve forty-two days in jail. Id. at 434. In response to the alien's attempt to compare his offense to the offense at issue in Eslamizar, we offered the following

31

interpretation of the BIA's holding:

> Unlike the right to have each element of a crime proven "beyond a reasonable doubt," the Constitution does not entitle a person facing up to six months in jail the rights to indictment by a grand jury or to a trial by jury. Blanton v. N. Las Vegas, [489 U.S. 538 (1989)]; Hurtado v. California, [110 U.S. 516 (1884)]. Thus, while the BIA referred to a number of procedural deficiencies in Eslamizar, it was the inadequate burden of proof that alone formed the basis for its holding.

Id. This Court in Burrell v. Attorney General, 347 F. App'x 805 (3d Cir. 2005) (per curiam), likewise rejected the alien's contention that his convictions could not be crimes involving moral turpitude because they were all disorderly persons offenses under New Jersey law, id. at 807. Noting the irrelevance of New Jersey's own characterizations, we stated that the "proper inquiry is whether the offense was 'a formal judgment of guilty of the alien entered by a court,' and whether it therefore constitutes a conviction pursuant to [§ 1101(a)(48)(A)]." Id. The alien's convictions for unlawful taking of the means of conveyance, receipt of stolen property, and shoplifting all constituted formal judgments of guilt. Id.

32

It is well established that we are not bound by our own non-precedential opinions. See, e.g., 3d Cir. I.O.P. 5.7 ("The court by tradition does not cite to its not precedential opinions as authority. Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing."). We further note that the decisions did not include a full analysis of either § 1101(a)(48)(A), Eslamizar, or the subsequent BIA decisions. In fact, the Court in Burrell did not even cite to Eslamizar itself. Furthermore, we believe that the statement in Hussein that the "inadequate burden of proof . . . alone formed the basis" of the holding in Eslamizar, 413 F. App'x at 434, is best read as a statement that, given the arguments made by the parties, the burden of proof appeared to be the determinative factor (and not as a general observation about the relative importance of the various factors in Eslamizar or as a definitive holding about the BIA's interpretation of § 1101(a)(48)(A)).

33

We will grant Castillo's petition for review and remand for further proceedings consistent with this opinion. As we have noted, "'an agency can change or adopt its policies.'" Id. at 608 (quoting Johnson v. Ashcroft, 286 F.3d 696, 700 (3d Cir. 2002)). "However, an agency 'acts arbitrarily if it departs from its established precedents without announcing a principled reason for its decision,'" id. (quoting Johnson, 286 F.3d at 700), and, in any case, "any announced changes must be based on a permissible construction of the statute,'" id. at 608 n.19. On remand, the BIA should consider the broader question we initially asked it to address in our prior opinion, i.e., whether Castillo was "'convicted of [a] crime [ ]'" under § 1227(a)(2)(A)(ii)." Castillo, 411 F. App'x at 503; see also, e.g., id. ("While the statutory

---

We reach a somewhat similar conclusion with respect to a Tenth Circuit opinion that briefly addressed Eslamizar (and actually represents the only precedential circuit court decision to have done so before our opinion). In Gradiz v. Gonzales, 490 F.3d 1206 (10th Cir. 2007), the court observed that the BIA "found that a state-labeled 'violation' was not a conviction for purposes of § 1101(a)(48)(a) when it was adjudicated using a preponderance-of-the-evidence standard rather than the standard of proof beyond a reasonable doubt," id. at 1208. According to the Tenth Circuit, "Eslamizar does nothing more than reaffirm our traditional standard that findings of guilt must be beyond a reasonable doubt." Id. However, the Gradiz court made these statements in the specific context of deciding that a no contest plea, probation, and deferred sentence qualified as a conviction under § 1101(a)(48)(A), id. at 1207-08.

34

definition of 'conviction' may be found to assist in the analysis, even given that definition, one must still ask 'conviction' of what."). In doing so, it should endeavor to provide an explicit justification for its answer to our question. In turn, the BIA should attempt to clarify Eslamizar and the agency's reading of § 1101(a)(48)(A). The agency is free to reconsider that problematic opinion, provided that it states a reasoned explanation for doing so and any announced changes are based on a permissible construction of the federal immigration statute. Otherwise, the BIA should then determine whether—given New Jersey's then-operative characterization of the shoplifting offense, the consequences of any finding of guilt under New Jersey state law, and the rights available to the accused as well as the other characteristics of the proceeding before the East Brunswick Municipal Court—the finding that Castillo was guilty of shoplifting was entered in a "*criminal proceeding*, that is, a trial or proceeding whose purpose is to determine whether the accused committed a crime and which provides the constitutional safeguards normally attendant upon a criminal adjudication," Eslamizar, 23 I. & N. Dec. at 687.[5]

---

[5] We have also considered Castillo's due process argument and find it to be without merit. See, e.g., Castro v. Attorney General, 671 F.3d 356, 365 (3d Cir. 2012) ("In the removal context, due process requires that 'an alien be provided with a full and fair hearing and a reasonable opportunity to present evidence.'" (quoting Romanishyn v. Attorney General, 455 F.3d 175, 185 (3d Cir. 2006))); Jean-Louis, 582 F.3d at 466 n.4 (concluding that alien seeking discretionary relief from removal has no cognizable liberty or

## IV.

For the foregoing reasons, we will grant the petition for review and remand for further proceedings consistent with this opinion.

---

property interest subject to protection of Due Process Clause).