**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 15-2645

———————

GURSON OSWALD GOURZONG,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

Respondent

———————————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No.: A038-201-760)
Immigration Judge: Honorable Walter A. Durling

———————————

Argued on April 7, 2016

Before:  FISHER, RENDELL, and COWEN, <u>Circuit Judges</u>

(Opinion filed:  June 14, 2016)

Craig R. Shagin, Esquire **(Argued)**
The Shagin Law Group
120 South Street
The Inns of St. Jude
Harrisburg, PA 17101

        Counsel for Petitioner


Benjamin C. Mizer, Esquire
Anthony C. Payne, Esquire
Jesse M. Bless, Esquire **(Argued)**
Tiffany L. Walters, Esquire
Jennifer P. Williams, Esquire
United States department of Justice
Office of Immigration Litigation
Room 5049
P. O. Box 878
Ben Franklin Station
Washington, DC 20044

        Counsels for Respondent

---

O P I N I O N

---

**RENDELL**, <u>Circuit Judge</u>:

Petitioner Gurson Oswald Gourzong, a native of Jamaica, was found by an immigration judge to be removable pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), because he had been "convicted of an aggravated felony"—specifically, he had been convicted by a special court-martial of the United States military of having sexual intercourse with a person under the age of sixteen. The Board of Immigration Appeals ("BIA") affirmed the Immigration Judge's Order. Gourzong now seeks review of the BIA's Order. He contends that his conviction by a special court-martial does not render him removable, because convictions by special courts-martial categorically fall outside the definition of the term "conviction" found at Section 101(a)(48)(A) of the INA, 8 U.S.C. § 1101(a)(48)(A). That definition provides in pertinent part that "[t]he term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court . . . ." *Id.* Specifically, Gourzong contends that a special court-martial is not a "court" because there is a possibility that a special court-martial can convene without a legally trained judge presiding over it. We agree with the BIA that, as a general matter, convictions by special courts-martial qualify as convictions for purposes of the INA. Gourzong is therefore removable by reason of committing an aggravated felony within the meaning of the INA, and we thus lack jurisdiction to review the final Order of Removal. *See* 8 U.S.C. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a [covered] criminal offense . . . .").

## I. Background

Gourzong was admitted to the United States as a lawful permanent resident in 1983. In 1993, after having joined the United States military, he was convicted by a special court-martial convened at Camp Pendelton, California, of having violated Articles 90, 92, and 120 of the Uniform Code of Military Justice ("UCMJ"), which, at that time, prohibited, respectively, willfully disobeying a lawful order, 10 U.S.C. § 890(2), failing to obey a lawful order, *id.* § 892, and, most significantly for present purposes, "commit[ing] an act of sexual intercourse with a female not his wife who has not attained the age of sixteen years," Act of Jan. 3, 1956, Pub. L. No. 84-460, § 920, 70A Stat. 1, 73 (current version at 10 U.S.C. § 920). The details of Gourzong's conviction are sparse. The Administrative Record reflects that he was represented by counsel in the proceedings, **A.R. 131**, and that he pleaded guilty to the charges, **A.R. 128**, but reflects nothing specific about the factual bases for the charges or the composition of the court-martial. *But see infra* note 6.

The members of the special court-martial imposed a sentence of six months confinement, loss of pay, and bad-conduct discharge. **A.R. 129**. The convening authority, a Lieutenant Colonel of the United States Marine Corps, approved the sentence, but suspended a portion of the confinement term and withheld executing the bad-conduct discharge. **A.R. 129**. The bad-conduct-discharge sentence was ultimately executed, however, on August 22, 1996, after the appellate review procedures set forth in Article 71(c) of the UCMJ, 10 U.S.C. § 871(c), had been satisfied. **A.R. 130.**

4

The Department of Homeland Security brought removal proceedings against Gourzong in 2014, alleging that, because of his conviction by special court-martial, he was removable for having committed the aggravated felony of sexual abuse of a minor. **A.R. 51.** An Immigration Judge found Gourzong to be removable based both on his conviction of an aggravated felony and on his conviction of two or more crimes of moral turpitude—the second conviction being a 2006 conviction in the Court of Common Pleas of Delaware County, Pennsylvania, for making terroristic threats.[1] **A.R. 51.**

Gourzong appealed the Immigration Judge's Order to the BIA, arguing that convictions by special courts-martial do not qualify as "convictions" as defined in § 101(a)(48)(A) the INA. *Cf.* 8 U.S.C. § 1101(a)(48)(A) ("The term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court . . . ."). In particular, he focused his argument on whether a special court-martial is a "court." He relied upon language in the BIA's opinion in *Matter of Rivera-Valencia*, 24 I. & N. Dec. 484 (BIA 2008), in which the BIA, finding that convictions by *general* courts-martial do qualify as convictions under the INA, had stated that the term "court" means "a governmental body consisting of one or more judges who sit to adjudicate disputes and administer justice." *See id.* at 487 (quoting *Black's Law Dictionary* 378 (8th ed. 2004)). Gourzong argued that, because a special court-martial can, under certain conditions, proceed without a

---

[1] The Immigration Judge's determination that Gourzong was convicted of two or more crimes of moral turpitude is not before us.

5

legally trained judge, a special court-martial is not a "court" under the INA.

A one-member panel of the BIA, in a non-precedential opinion, disagreed, finding that the differences between general and special courts-martial were not significant enough to warrant a different result from that in *Rivera-Valencia*. **See A.R. 4-5.** The BIA rejected Gourzong's argument that the possibility of a lack of a legally trained judge placed convictions by special courts-martial outside the definition of "conviction" under the INA. The BIA instead concluded that special courts-martial were "genuine criminal proceeding[s]" given the procedural protections afforded to the accused and the role of special courts-martial in adjudging criminal penalties under the jurisdiction of the military. A.R. 5 ("Consequently, we fail to find the possibility that a military judge may not be appointed by the convening authority to a special court-martial serves to diminish the effect and undermine the validity of the actions taken by the members of that adjudicative body, *i.e.*, findings of a formal judgment of guilt entered in a genuine criminal proceeding pursuant to the governing laws of the United States Armed Forces, so as to qualify as a conviction for immigration purposes."). Moreover, the BIA found the possibility that a special court-martial could convene without a military judge to be mitigated by its rarity, and by the requirements in the Manual for Courts-Martial that (a) court-martial members be chosen on the basis of "age, education, training, experience, length of service, and judicial temperament," and (b) "unless otherwise specified, the president of a special court-martial without a military judge has the same authority and responsibility as a military judge." A.R. 5 (quoting Rules for Courts-Martial

6

("RCM") § 502(a)(1), 801(a)). Gourzong now seeks review of the BIA's Order.

## II. Jurisdiction and Standard of Review

The Immigration Judge had jurisdiction over Gourzong's removal proceedings under 8 U.S.C. § 1229a. The BIA had jurisdiction to review the Immigration Judge's Order of Removal under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15.

We generally have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1), but that jurisdiction does not extend to review of "any final order of removal against an alien who is removable by reason of having committed [an aggravated felony]," *id.* § 1252(a)(2)(C). We have jurisdiction to determine whether this "necessary jurisdiction-stripping fact[]" is present here—that is, we have jurisdiction to determine whether Gourzong was convicted of committing an aggravated felony within the meaning of the INA insofar as it allows us to determine whether we have jurisdiction over his petition for review. *See Borrome v. Attorney Gen. of U.S.*, 687 F.3d 150, 154 (3d Cir. 2012). Because we ultimately conclude that Gourzong was convicted of committing an aggravated felony within the meaning of the INA, we lack jurisdiction over his petition for review.

Because the BIA's written decision in this case was an unpublished, non-precedential decision issued by a single BIA member, to the extent it was interpreting statutes, we will not afford it *Chevron* deference. *Mahn v. Attorney Gen. of U.S.*, 767 F.3d 170, 173 (3d Cir. 2014). Instead, those issues of statutory interpretation, along with other questions

7

of law, will be reviewed *de novo*. *Id.* To the extent the single-member panel was interpreting BIA precedent, the standard of review is unsettled.[2] However, because even under a *de novo* standard of review we agree with the single-member panel's interpretations, we need not resolve this issue.

## III. Analysis

---

[2] We have not decided the extent of deference we owe—if any—to a single-member panel's interpretations of prior BIA precedents (such as the opinion from *Rivera-Valencia*). Other courts have adopted varying deferential standards. *Compare Mansour v. Holder*, 739 F.3d 412, 414 (8th Cir. 2014) (finding that *Auer* deference is owed to single-member BIA panel interpretations of BIA regulations); *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008) ("An agency's interpretation of its own precedents receives considerable deference—a form of deference that applies in equal measure to the BIA's interpretation of its precedents." (citations omitted) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997))); *Zheng v. U.S. Dep't of Justice*, 416 F.3d 129, 131 (2d Cir. 2005) ("The BIA's determination that [a prior BIA precedent] does not apply . . . is a reasonable interpretation that merits deference." (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945))), *with Lezama-Garcia v. Holder*, 666 F.3d 518, 532 (9th Cir. 2011) (affording a single-member BIA panel no deference for its interpretations of BIA regulations).

We have never addressed the specific issue of whether convictions by special courts-martial can qualify as convictions that can render an alien removable under § 237(a)(2)(A)(iii) of the INA. Our resolution of this issue initially requires consideration of the different types of courts-martial in the military justice system.

*a. Classifications of Courts-Martial*

Special courts-martial are one of three classifications of courts-martial that can try persons subject to the military's jurisdiction: summary, special, and general. 10 U.S.C. § 816. Summary courts-martial have limited jurisdiction and are, as the name suggests, summary in nature. A summary court-martial consists of a single commissioned officer, who presides over the proceedings, represents both the government and the accused, and makes the ultimate finding as to the accused's guilt. *See id.* § 816; *Middendorf v. Henry*, 425 U.S. 25, 41 (1976); RCM § 1301(b). A summary court-martial has jurisdiction only if the accused does not object to trial by summary court-martial and, regardless, lacks jurisdiction to try "officers, cadets, aviation cadets, and midshipmen." 10 U.S.C. § 820. Although summary courts-martial may try persons for any noncapital offenses under the UCMJ, they may not impose "death, dismissal, dishonorable or bad-conduct discharge, confinement for more than one month, hard-labor without confinement for more than 45 days, restriction to specified limits for more than two months, or forfeiture of more than two-thirds of one month's pay." *Id.* Given their limited jurisdiction and summary nature, convictions by summary courts-martial are not necessarily given weight outside the military justice system. For example, convictions by summary courts-martial are not counted when

9

determining a defendant's criminal history under the U.S. Sentencing Guidelines. U.S.S.G. § 4A1.2(g). Furthermore, the Supreme Court has determined that summary courts-martial are not "criminal prosecution[s]" for purposes of the Sixth Amendment's right to counsel. *See Middendorf*, 425 U.S. at 42.

General courts-martial are the classification of courts-martial with the authority to impose the most severe punishments. General courts-martial consist of either "a military judge and not less than five members" or, if the accused so requests, "only a military judge," 10 U.S.C. § 816(1), and "have jurisdiction to try persons . . . for any offense made punishable [under the UCMJ] and may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by this chapter, including the penalty of death . . . ." *Id.* § 818(a). Courts are in wide agreement that convictions by general courts-martial receive the weight of equivalent convictions in the civilian system. *See, e.g.*, *United States v. Shaffer*, 807 F.3d 943, 948 (8th Cir. 2015) ("[W]e hold that Shaffer's conviction by general court-martial is a conviction in 'a court of the United States' within 18 U.S.C. § 3559(c)."); *United States v. Grant*, 753 F.3d 480, 484-85 (4th Cir. 2014) (holding that a conviction by a general court-martial can qualify as the predicate offense under the Armed Career Criminal Act); *United States v. Martinez*, 122 F.3d 421, 424 (7th Cir. 1997) (holding that convictions by general courts-martial can serve as the predicate felonies for the felon-in-possession firearm prohibition at 18 U.S.C. § 922(g)(1)); *United States v. MacDonald*, 992 F.2d 967, 970 (9th Cir. 1993) ("We hold that a general court-martial is a 'court' within the meaning of 18 U.S.C. § 922(g)(1) and a conviction, such as MacDonald's, for which an individual is

punishable for a term exceeding one year, amounts to a 'crime' for purposes of § 922(g)(1).”); *Rivera-Valencia*, 24 I. & N. Dec. at 486-89 (holding that convictions by general courts-martial qualify as convictions under § 237 of the INA); *see also* U.S.S.G. § 4A1.2(g) (“Sentences resulting from military offenses are counted if imposed by a general or special court-martial.”). Relatedly, the Double Jeopardy Clause bars federal prosecution for an offense previously tried before a general court-martial. *See Shaffer*, 807 F.3d at 946-47 (“[C]ourt-martial conviction is a bar to successive federal prosecution.”); *United States v. Stoltz*, 720 F.3d 1127, 1129 (9th Cir. 2013) (“If a servicemember is tried by general or special courtmartial, the Double Jeopardy Clause of the Fifth Amendment bars a subsequent civilian prosecution for the same offense.”).

Special courts-martial, which are at issue here, are similar to general courts-martial in their general jurisdiction, but they differ with respect to the penalties that can be imposed and with respect to their composition. They have “jurisdiction to try persons . . . for any noncapital offense made punishable by [the UCMJ] and, under such regulations as the President may prescribe, for capital offenses.” 10 U.S.C. § 819. However, they may not impose the penalties of “death, dishonorable discharge, dismissal, confinement for more than one year, hard labor without confinement for more than three months, forfeiture of pay exceeding two-thirds pay per month, or forfeiture of pay for more than one year.” *Id.*[3]

---

[3] Although not material to our analysis, this current version of 10 U.S.C. § 819 differs slightly from the version in effect on the date of Gourzong’s conviction. At the time of his conviction, a special court-martial could not impose

11

Special courts-martial consist of either (a) "not less than three members"; (b) "a military judge and not less than three members;" or (c) only a military judge if the accused so requests. 10 U.S.C. § 816(2). Moreover:

> A bad-conduct discharge, confinement for more than six months, or forfeiture of pay for more than six months may not be adjudged unless a complete record of the proceedings and testimony has been made, counsel . . . was detailed to represent the accused, and a military judge was detailed to the trial, except in any case in which a military judge could not be detailed to the trial because of physical conditions or military exigencies. In any such case in which a military judge was not detailed to the trial, the convening authority shall make a detailed written statement, to be appended to the record, stating the reason or reasons a military judge could not be detailed.

*Id.* § 819. Notably, convictions by special courts-martial, like convictions by general courts-martial, are counted when determining a defendant's criminal history under the U.S. Sentencing Guidelines. U.S.S.G. § 4A1.2(g) ("Sentences resulting from military offenses are counted if imposed by a

---

confinement of more than six months or forfeiture of pay for more than six months. *See* National Defense Authorization Act for Fiscal Year 2000, Pub. L. No. 106-65, § 577, 113 Stat. 512, 625 (1999). Under the amended statute, the penalties of confinement and forfeiture of pay can extend up to one year. *Id.*

general or special court-martial."). Moreover, as the Ninth Circuit Court of Appeals has noted, "[i]t is also well settled that a general or special court-martial precludes a subsequent civilian criminal prosecution for the same offense." *Stoltz*, 720 F.3d at 1128.

### b. Section 101(a)(48)(A) of the INA

Since we must determine whether Gourzong was convicted of an aggravated felony, we consider the issue of first impression: whether judgments of guilt by special courts-martial are "convictions" under § 237(a)(2)(A)(iii) of the INA. We have previously addressed what "factors may be relevant in deciding whether a finding of guilt constitutes a conviction" under § 101(a)(48)(A) of the INA. *See Castillo v. Attorney Gen. U.S.*, 729 F.3d 296, 305 (3d Cir. 2013). In *Castillo*, the petitioner had been charged with removability under § 237(a)(2)(A)(ii) of the INA, which, like § 237(a)(2)(A)(iii), requires a showing that an alien has been "convicted" of a crime. *Castillo*, 729 F.3d at 298. The petitioner contended that his conviction for shoplifting by a municipal court was not a conviction purposes of the INA because he had been convicted only of a "disorderly persons offense" under New Jersey law—that is, a petty offense for which he had no right to trial by jury or indictment by a grand jury. *Id.* at 299. Setting aside whether the disorderly persons offense constituted a "crime" under the pertinent part of the INA, we examined what characteristics of a proceeding bring its convictions under the definition of "conviction" in § 101(a)(48)(A) of the INA. *See Castillo*, 729 F.3d at 302 n.1 (leaving open the question "conviction of what[?]" for remand). In so doing, we rejected a narrow approach that looked only to a single factor—namely, whether the

13

conviction required proof of each element beyond a reasonable doubt[4]—and, instead, adopted an "open-ended inquiry" as to whether the judgment of guilt was "entered in a . . . genuine criminal proceeding." *See id.* at 307. We pointed to several relevant factors, "including how the prosecuting jurisdiction characterized the offense at issue, the consequences of a finding of guilt, and the rights available to the accused as well as any other characteristics of the proceeding itself." *Id.*

The single-member panel of the BIA in this case applied this open-ended approach in determining whether a conviction by special court-martial can be a "conviction" under § 101(a)(48)(a). In so doing, the BIA relied heavily upon the BIA's precedential opinion in *Matter of Rivera-Valencia*. In *Rivera-Valencia*, the BIA found, after analyzing the characteristics of general courts-martial and the procedural protections they offer, that a general court-martial is a "'genuine criminal proceeding', that is, a proceeding that is 'criminal in nature under the governing laws of the prosecuting jurisdiction.'" 24 I. & N. Dec. at 486-87 (quoting *Matter of Eslamizar*, 23 I. & N. Dec. 684, 688 (BIA 2004)); *see also Castillo*, 729 F.3d at 308 (citing *Rivera-Valencia* approvingly). The BIA here found that "the differences between a general court-martial[] and a special court-martial

---

[4] As we noted in *Castillo*, that each element must be proven beyond a reasonable doubt is a necessary but not sufficient condition for a proceeding to qualify as a "genuine criminal proceeding." *Id.* at 307. A decision maker must undertake an "open-ended inquiry" of the other characteristics of the proceeding to determine if it qualifies as a "genuine criminal proceeding." *Id.*

14

are not so significant so as to warrant a different result" from that in *Rivera-Valencia*. *See* A.R. 4-5. The BIA here noted that a judgment of guilt under a special court-martial, as under a general court-martial, must be found beyond a reasonable doubt, and that accused persons before a special court-martial have the right against compulsory self-incrimination, the right to representation by counsel at public expense, and the right to call witnesses and present evidence. *See id*. We agree with the BIA's conclusion that convictions by special courts-martial are, as a general matter, convictions within the meaning of § 101(a)(48)(A).[5]

---

[5] We note that factors beyond those cited by the BIA below buttress the conclusion that special courts-martial are, as a general matter, "genuine criminal proceeding[s]." *See Castillo*, 729 F.3d at 307; *see also Middendorf*, 425 U.S. at 31 ("General and special courts-martial resemble judicial proceedings . . . ."). The offenses triable by special court-martial include every noncapital offense triable by general court-martial, and are characterized by the military (through federal statute) as "punitive"—*i.e.*, criminal—offenses. *See* 10 U.S.C. § 819 (special courts-martial have jurisdiction to try "any noncapital offense made punishable by [the UCMJ]"); 10 U.S.C. § 866 (providing for review of certain sentences by a "Court of *Criminal* Appeals" (emphasis added)); Act of Aug. 10, 1956, Pub. L. No. 84-391, 70A Stat. 1, 64 (codified at 10 U.S.C § 877 *et seq.*) (titling the subchapter "Punitive Articles"). Also, even though the consequences of a finding of guilt by a special court-martial differ in degree from those that can be imposed by a general court-martial, they can include (at the time of Gourzong's conviction) up to six months' confinement and severe

Gourzong notes that the BIA did not acknowledge or refer to *Rivera-Valencia*'s view as to the ordinary meaning of the word "court" as "a governmental body consisting of one or more judges who sit to adjudicate disputes and administer justice," 24 I. & N. Dec. at 487, and urges that the BIA thus improperly departed from precedent without explanation. *Cf. Johnson v. Ashcroft*, 286 F.3d 696, 700 (3d Cir. 2002) ("Although an agency can change or adapt its policies, it acts arbitrarily if it departs from its established precedents without announcing a principled reason for the departure." (internal quotation marks omitted)). He urges, further, that *Rivera-Valencia*'s view as to the meaning of "court" controls here and that, because of the possibility that a special court-martial can convene without a legally trained judge, we must therefore grant his petition for review.

We disagree. First, *Rivera-Valencia* was not so limited. The BIA in *Rivera-Valencia* offered its view as to what constitutes a "court" in the context of rejecting an argument, similar to the one made here, that sought to cut through the open-ended inquiry and focus instead on a limited understanding of the word "court." It is not clear that this discussion was necessary to the BIA's conclusion that convictions by general courts-martial meet the definition in § 101(a)(48)(A). *See Rivera-Valencia*, 24 I. & N. Dec. at 488 ("[T]his Board has from its earliest days considered judgments entered by courts-martial, both domestic and foreign, to be valid 'convictions' for immigration purposes. We see nothing in the language of section 101(a)(48)(A) that would lead us to conclude that Congress intended to modify

financial penalties—penalties prototypical of those imposed by criminal courts. *See* 10 U.S.C. § 819.

16

this historical understanding by limiting the term 'court' to those organized under Article III of the Constitution or its counterparts under State law." (citations omitted)). More fundamentally, though, the BIA's view in *Rivera-Valencia* that a court is "a governmental body consisting of one or more judges who sit to adjudicate disputes and administer justice," *id.* at 487 (alterations omitted), does not resolve the question here of whether special courts-martial are, as a general matter, courts—after all, a typical special court-martial is presided over by a military judge, and all special courts-martial "sit to adjudicate disputes and administer justice." [6] Even in the instances when special courts-martial

---

[6] A study of the record and the UCMJ reveals that Gourzong's court-martial more than likely was presided over by a military judge given that he was adjudged a bad conduct discharge that was approved and eventually executed. *See* 10 U.S.C. § 819 ("A bad-conduct discharge . . . may not be adjudged unless . . . a military judge was detailed to the trial, except in any case in which a military judge could not be detailed to the trial because of physical conditions or military exigencies."). It is unlikely that "physical conditions or military exigencies" prevented the detailing of a military judge to Camp Pendelton, California, *see* A.R. 128, and, besides, there is no "detailed written statement . . . appended to the record, stating the reason or reasons a military judge could not be detailed," 10 U.S.C. § 819.

Notably, the bad conduct discharge was not executed immediately by the convening authority because it first had to meet the requirements of Article 71(c) of the UCMJ, *see* A.R. 130, which provides that the bad conduct discharge cannot "be executed until there is a final judgment as to the legality of the proceedings . . . ." 10 U.S.C. § 871(c)(1). "A judgment

17

lack a military judge, they have a president with, in general, "the same authority and responsibility as a military judge," as the single-member panel of the BIA noted below. *See* A.R. 5 (quoting RCM 801(a)).

More importantly, however, the BIA correctly identified several characteristics of special courts-martial that compel finding that they, like general courts-martial, are typically "genuine criminal proceedings." *See* A.R. 4-5 (finding that "the differences between a general court-martial[] and a special court-martial are not so significant so as to warrant a different result" from that in *Rivera-Valencia*). Gourzong's argument fails because its focus on a single factor contravenes the open-ended approach we adopted in *Castillo* and that was actually applied by the BIA in *Rivera-Valencia*. In *Castillo*, we were examining how to determine if the definition of "conviction" found at § 101(a)(48)(A) of the INA has been met—that is, how to determine whether "a formal judgment of guilt [was] entered by a court." We determined that the correct analysis for determining whether there was a "formal judgment of guilt . . . entered by a court" is to conduct an open-ended inquiry into whether the finding of guilt came in a "genuine criminal proceeding." *Castillo*, 729 F.3d at 306-07. Thus, we are satisfied that special courts-martial are, as a general matter, courts, given the characteristics of their proceedings as examined under our

---

as to legality of the proceedings is final in such cases when review is completed by a Court of Criminal Appeals," unless appellate review was waived or the appeal withdrawn. *Id.* This procedural protection via appellate review reaffirms our confidence that Gourzong's conviction by special court-martial qualifies as a conviction under § 101(a)(48)(A).

open inquiry: the manner in which the military (as authorized by Congress) characterizes them, the consequences of a finding of guilt, the rights available to the accused, and the other characteristics of the proceedings. These are the same factors that the BIA looked to in *Rivera-Valencia*, and the same ones applied by the BIA below. *See Rivera-Valencia*, 24 I. & N. Dec. at 487-89 (finding that proceedings before general courts-martial are "genuine criminal proceeding[s]" because, among other factors, convictions by general courts-martial are characterized as "criminal" by the laws of the United States military, because general courts-martial have the authority to "finally determine any case over which they have jurisdiction," and because general courts-martial offer significant procedural protections offered to the accused). We therefore find that the single-member panel of the BIA correctly concluded that Gourzong was convicted of an aggravated felony within the meaning of the definition of "conviction" in § 101(a)(48)(A) of the INA.[7]

---

[7] We do not foreclose the possibility that an alien could demonstrate that his or her particular special court-martial lacked many of the characteristics of a "genuine criminal proceeding" under the open-ended inquiry such that his or her specific judgment of guilt by a special court martial should not be considered to be a "conviction" under § 101(a)(48)(A) of the INA. Gourzong, however, has made no showing that his special court-martial lacked any of the factors that we have deemed relevant under the open-ended inquiry, such as "how the prosecuting jurisdiction characterized the offense at issue, the consequences of a finding of guilt, and the rights available to the accused as well as any other characteristics of the proceeding itself." *Cf. Castillo*, 729 F.3d at 307.

## IV. Conclusion

Because we agree with the BIA that convictions by special courts-martial are, as a general matter, convictions for purposes of § 101(a)(48)(A) of the INA, we conclude that we lack jurisdiction over Gourzong's petition for review. *See* 8 U.S.C. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a [covered] criminal offense."). We will therefore dismiss his petition for review.[8]

---

[8] The panel wishes to express its thanks to the Shagin Law Group and Craig R. Shagin, Esquire, for agreeing to serve as pro bono counsel and for their excellent advocacy on behalf of Mr. Gourzong.

Gourzong v. Attorney General of the United States, No.
15-2645, dissenting.

COWEN, Circuit Judge.

Gourzong was *not* "convicted of an aggravated felony
within the meaning of the definition of 'conviction' in §
101(a)(48)(A) of the INA." (Maj. Op. at 19.) This statutory
definition incorporates two basic requirements: (1) "a formal
judgment of guilt" of the alien—(2) entered by a "court."
Regardless of whether or not Gourzong's special court-
martial satisfied the first requirement (a question I need not—
and do not—decide), it clearly did not meet the second
requirement under the BIA's own precedential interpretation
of the term "court." Simply put, a special court-martial does
not constitute "a governmental body consisting of one or
more judges who sit to adjudicate disputes and administer
justice" where—in place of a legally trained and certified
military judge detailed by an assigned military judge and
ultimately answerable to the Judge Advocate General—an
active duty member of the United States Armed Forces, who
is chosen by the convening authority, returns to his or her
regular military duties once the proceeding is concluded, and
need not (and most likely would not) possess any legal or
judicial training or experience, presides over the special
court-martial. Accordingly, I must respectfully dissent.

The majority does not mention the government's
history of changing its positions throughout the course of this
immigration proceeding—or its failure to brief the merits of
Gourzong's petition for review when it should have. After
Gourzong appealed to the BIA, the government requested

summary affirmance, asserting that the issues on appeal were squarely controlled by existing precedent, did not involve the application of precedent to novel facts, and were not so substantial as to warrant a written opinion. It asked in the alternative for affirmance in a brief one-member decision, and the BIA actually dismissed the administrative appeal in such a non-precedential fashion. Nevertheless, the government, in lieu of filing a brief on the merits, then asked this Court to remand for the BIA "to further consider its finding that a special court-martial, with or without a military judge present, satisfies the conventional definition of a 'court' such that a conviction by special court-martial, regardless of whether a military judge is present, qualifies as a conviction under the [INA]" and to determine whether there was any evidence in the record indicating that a military judge was not present (Respondent's Motion to Remand at 1). See, e.g., Borrome v. Attorney General, 687 F.3d 150, 156 n.4 (3d Cir. 2012) ("Now the Government is singing a different tune. . . . The BIA had the opportunity to consider the issues and, at the Government's insistence, chose not to do so."). The Court ordered the government to brief the merits, but the government's cursory brief merely reiterates the same arguments for remand it had set forth in the motion. Threatened with sanctions (and represented by new counsel), the government finally submitted a real merits brief. In this second brief, the government drastically changes its whole approach by withdrawing the remand requests and by indicating that the Court need not even consider Chevron deference principles, even though the government had emphasized this doctrine in its earlier submissions. While I appreciate the apologies offered by the Department of

2

Justice's attorney, I remain troubled by the government's conduct in this case.

This matter, in turn, should be decided based on the administrative record now before the Court, i.e., on the basis of a special court-martial conducted without a military judge. The majority may well be correct that a military judge is typically detailed to preside over a special court-martial. Nevertheless, we should still focus on what the government has shown actually happened in Gourzong's own special court-martial—and not what usually happens in such proceedings either now or when his court-martial convened in November of 1993 and January of 1994. Simply put, I do not believe that the government has established that any military judge was detailed to preside over a special court-martial that occurred more than twenty years ago. The rather meager record contained no clear references to a military judge. In fact, the IJ relied on his own personal experience as a former special court-martial judge to opine on the record that a military judge was detailed here. As Gourzong's able pro bono counsel explains, "[t]he IJ, far from requiring DHS to prove by clear, convincing and unambiguous evidence each and every element necessary to support an order of deportation, Woodby v. INS, 385 U.S. 276, 286 (1966), merely assumed evidence not in the record and for which petitioner had no means to rebut." (Petitioner's Brief at 5.) As the government likewise notes, "the Board held that a conviction by special court-martial, *with or without a military judge present*, qualifies as a conviction by a 'court' under the INA." (Respondent's First Brief at 8 (emphasis added) (citing AR4-AR5).)

3

The majority places particular emphasis on this Court's ruling in <u>Castillo v. Attorney General</u>, 729 F.3d 296 (3d Cir. 2013), and the open-ended notion of a "genuine criminal proceeding." However, § 101(a)(48)(A) actually defines "a conviction" as, inter alia, "a formal judgment of guilt of the alien entered by a *court*" (or, if adjudication has been withheld, where (1) "a judge" or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (2) "the judge" has ordered some form of punishment, penalty, or restraint). The "genuine criminal proceeding" approach represents an interpretation of the "formal judgment of guilt" requirement—not the "court" requirement. The BIA specifically explained that "'a far more sensible reading of the statute exists: namely, that by "judgment of guilt" Congress most likely intended to refer to a judgment *in a criminal proceeding*.'" <u>Id.</u> at 304 (quoting <u>In re Eslamizar</u>, 23 I. & N. Dec. 684, 687 (BIA 2004) (en banc)). Our ruling in <u>Castillo</u> likewise did not specifically address this "court" language. On the contrary, we assumed that the New Jersey Municipal Court constituted a "court" under the terms of the immigration statute. In fact, we repeatedly referred to a "court" throughout our discussion of BIA case law and the "genuine criminal proceeding" approach. <u>See, e.g.</u>, <u>id.</u> at 307 ("However, this does not mean that a judgment was entered in a true or genuine criminal proceeding—and therefore constituted a conviction pursuant to § 1101(a)(48)(A)—merely because a *court* entered a formal judgment of guilt under the requisite 'reasonable doubt' standard of proof and imposed a form of punishment." (emphasis added)). In its precedential decision in <u>In re</u>

4

Rivera-Valencia, 24 I. & N. Dec. 484 (BIA 2008), the BIA expressly distinguished the "genuine criminal proceeding" inquiry from the question of "whether that adjudication of guilt was entered by a 'court,'" id. at 487.[1]  As the IJ recognized in the current proceeding, "[t]he Board broke its analysis down into the two requirements under 101(a)(48)(A): (1) a formal judgment of guilt of the alien; (2) entered by a court."  (AR52 (citing Rivera-Valencia, 24 I. & N. Dec. at 486-88).)

Given the statutory language as well as the existing case law, the BIA's ruling in this case should not be upheld merely because we may agree that, like general courts-martial, special courts-martial "are typically 'genuine criminal proceedings.'"  (Maj. Op. at 18 (citing AR4-AR5).)  In other words, it is not enough to point out that the prosecution must establish guilt beyond a reasonable doubt or highlight the various rights possessed by the accused in a special court-martial proceeding.  In fact, such an approach would render superfluous the statutory "court" language.  See, e.g., United States v. Cooper, 396 F.3d 308, 312 (3d Cir. 2005) ("It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous." (citing TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001))).

Just as it purported to define "a formal judgment of

---

[1] In Castillo, we omitted from our discussion of Rivera-Valencia the BIA's own interpretation of the term "court."  See Castillo, 729 F.3d at 308.

guilt" as a judgment entered in a genuine criminal proceeding, see, e.g. Castillo, 729 F.3d at 302-311 (reviewing BIA case law beginning with Eslamizar), the agency adopted its own definition of a "court" in Rivera-Valencia. Recognizing that the INA "does not define the term 'court,'" the BIA gave "the word its ordinary, contemporary, and common meaning: '[a] governmental body consisting of one or more judges who sit to adjudicate disputes and administer justice.'" Rivera-Valencia, 24 I. & N. Dec. at 487 (quoting Black's Law Dictionary 378 (8th ed. 2004)).). Determining that a general court-martial satisfied this conventional definition, the BIA observed, inter alia, that a military judge presides over each general court-martial. Id. It specifically noted that "[a] military judge must be a member of a Federal or State bar whose qualifications for judicial duty have been certified by the Judge Advocate General for his or her particular branch of the service." Id. at 488 n.3 (citing 10 U.S.C. § 826(b)). In its non-precedential disposition dismissing Gourzong's administrative appeal, the BIA did not even mention this definition—which, in contrast, was set forth in a precedential agency decision. An administrative agency acts arbitrarily if it departs from an established precedent without providing a principled reason for its departure. See, e.g., Johnson v. Ashcroft, 286 F.3d 696, 700 (3d Cir. 2002). The majority attempts to minimize this definition by indicating that it may have been dicta offered in the context of rejecting an argument "that sought to cut through the open-ended inquiry and focus instead on a limited understanding of the word 'court.'" (Maj. Op. at 16.) However, I have already explained why I believe this "open-ended inquiry" really implicates the "formal judgment of

6

guilt" requirement. Exercising its expertise in matters of immigration law, the BIA clearly—and appropriately—noted that the INA does not define the meaning of the term "court," adopted the "ordinary, contemporary, common meaning" of this term, and then applied this general definition in the context of a general court-martial (which, according to the BIA as well as the majority, shares several similarities with a special court-martial). See, e.g., Castillo, 729 F.3d at 302 ("'On the other hand, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."'" (quoting Acosta v. Ashcroft, 341 F.3d 218, 222 (3d Cir. 2003))). I fail to see why the agency (or this Court) should not apply the same definition here.[2]

A special court-martial clearly does not constitute "a governmental body consisting of one or more judges who sit to adjudicate disputes and administer justice" where a special court-martial member presides in place of a military judge. The majority asserts that, "[e]ven in the instances when special courts-martial lack a military judge, they have a president with, in general, 'the same authority and responsibility as a military judge,' as the single-member panel of the BIA noted below." (Maj. Op. at 17-18 (quoting AR5).)

---

[2]  The majority observes that we have yet to decide whether Auer deference should be accorded to a single-member's interpretation of prior BIA precedent. I note that the government does not invoke this specific doctrine (and, on the contrary, indicates in its second brief that we need not even consider the Chevron doctrine).

7

However, as Gourzong explains in some detail, the president of a special court-martial is no real substitute for a military judge.

On the one hand, military judges (as the BIA specifically noted in Rivera-Valencia) are licensed attorneys certified for judicial duty by the respective Judge Advocate General. Rivera-Valencia, 24 I. & N. Dec. at 488 n.3. "The military judge of a general court-martial shall be designated by the Judge Advocate General, or his designee, of the armed force of which the military judge is a member for detail in accordance with regulations." 10 U.S.C. § 826(c). Pursuant to the Manual for Courts-Martial, a military judge is detailed "by a person assigned as a military judge and directly responsible to the Judge Advocate General or the Judge Advocate General's designee." R.C.M. § 503(b)(1). A commissioned officer certified as qualified for duty as a military judge of a general court-martial "may perform such duties only when he is assigned and directly responsible to the Judge Advocate General, or his designee" and may perform other duties as assigned by or with the approval of the Judge Advocate General (or designee). 10 U.S.C. § 826(c). The military judge may be changed by an authority competent to detail the military judge without cause before the court-martial is assembled or, after assembly, on account of disqualification or for good cause shown. R.C.M. § 505(e). "The convening authority may not prepare or review any report concerning the effectiveness, fitness, or efficiency of a military judge detailed to a special court-martial which relates to the performance of duty as a military judge." R.C.M. § 104(b)(2)(B); see also id. (stating that when military

8

judge is normally rated or the military judge's report is reviewed by convening authority, manner in which such military judge will be rated or evaluated upon performance of duty as military judge may be prescribed in regulations which shall ensure absence of command influence); 10 U.S.C. § 826(c) (stating that, unless court-martial was convened by President or respective Secretary, convening authority is prohibited from preparing or reviewing any report on effectiveness, fitness, or efficiency of detailed military judge relating to performance as military judge). In the end, the respective Judge Advocate General has responsibility for the professional supervision of military judges. See, e.g., R.C.M. § 109(a).

On the other hand, the court-martial members are either active duty commissioned officers, warrant officers, or enlisted persons. R.C.M. § 502(a)(1). They are detailed by "the convening authority" as, "in his opinion are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." 10 U.S.C. § 825(d)(2). While the convening authority is prohibited from considering or evaluating the members' performance of duty as a court-martial member in the preparation of an effectiveness, fitness, or efficiency report or any other document used to determine advancements, transfer, or retention, R.C.M. § 104(b)(1), the convening authority may, before the court-martial is assembled, change the members without showing cause (and delegate to the staff judge advocate, legal officer, or other principal assistant to the convening authority the power to excuse a certain number of members without cause), R.C.M. § 505(c)(1)(A), (B).

After assembly, the convening authority may excuse members for good cause shown on the record. R.C.M. § 505(c)(2)(A)(i). In turn, the highest-ranking member of the special court-martial serves as its president. R.C.M. § 502(b)(1).

Without impugning his or her intelligence, experience, or impartiality, it is clear that the president of a special court-martial would typically lack the legal (and judicial) training and experience possessed by a military judge. After all, would a logistics officer (Gourzong was assigned to a motor transport battalion) really have any experience or knowledge dealing with the sorts of legal issues that judges are regularly expected to decide, such as evidentiary issues? Likewise, a military judge is in large part insulated from the regular command structure insofar as he or she is specifically certified for judicial duties by the Judge Advocate General, is detailed by an assigned military judge, and is ultimately answerable to the Judge Advocate General. However, the president and the other special court-martial members are active duty officers and enlisted persons specifically chosen by the convening authority—who even makes this choice based on the authority's own assessment of their respective qualifications. Even if they attempt to remain impartial, could such members—who return to their regular military duties once the special court-martial is concluded—really be

10

compared to professional and independent judicial officers?[3]

Accordingly, I would grant the petition for review.

---

[3] I further note that the other members of the special court-martial can object to the president's rulings on interlocutory questions of fact, and the president is authorized to consult with his or her fellow members before making a decision on such matters. R.C.M. § 801(e)(2)(B), (3)(D). The president, in turn, deliberates with the other special court-martial members to determine whether the accused is proved guilty. R.C.M. § 502(a)(2). Accordingly, a court-martial president actually appears to represent a sort of amalgamation of a civilian judge and jury foreperson. Like their civilian counterparts (who do not participate in jury deliberations), military judges do not vote with the court-martial members and are prohibited from consulting with the members except in the presence of the accused and respective counsel. 10 U.S.C. § 826(c). Likewise, their legal and interlocutory rulings are not subject to member review. R.C.M. § 801(e)(1)(A).