**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1823
_____

ROBERTO LUNA-REYES,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

ON PETITION FOR REVIEW OF A
DECISION OF THE BOARD OF IMMIGRATION APPEALS
(A87-942-339)
Immigration Judge: Alberto J. Riefkohl
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 14, 2019
_____

Before: GREENAWAY, JR., SHWARTZ, and PORTER, <u>Circuit Judges</u>.

(Opinion Filed: September 3, 2020)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Roberto Luna-Reyes petitions for review of the Board of Immigration Appeals' ("BIA") decision dismissing his appeal of the Immigration Judge's ("IJ") order denying his application for cancellation of removal. Because the BIA correctly concluded that Luna-Reyes's third drunk-driving offense constituted a "conviction" under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(48)(A), the BIA properly held that he was ineligible for relief. We will therefore deny the petition for review.

I

Luna-Reyes, a native and citizen of Mexico, arrived in the United States in 1992 without inspection. In 2010, Luna-Reyes was convicted of having "a third or subsequent violation" of New Jersey's Driving While Intoxicated ("DWI") statute, N.J. Stat. Ann. § 39:4-50(a)(3), and a municipal court sentenced him to 180 days in jail, imposed a $1,000 fine, ordered that he install an ignition interlock device in his car, and suspended his license for ten years, N.J. Stat. Ann. § 39:4-50(a)(3) (providing these penalties "[f]or a third or subsequent violation" of the DWI statute).

The Department of Homeland Security ("DHS") thereafter issued to Luna-Reyes a notice to appear before an IJ and charged him with removability as an "alien present in the United States who has not been admitted or paroled." AR 653. The initial notice to appear did not specify a date or time for his removal hearing, but DHS later issued Luna-Reyes a notice of hearing that included this information.

2

Luna-Reyes appeared before an IJ for a hearing and sought cancellation of removal. The IJ reasoned that, for Luna-Reyes to obtain cancellation of removal, he had to establish, among other things, that he was a "person of good moral character" during his period of physical presence in the United States. AR 116 (citing 8 U.S.C. § 1229b(b)(1)(B)). Because the INA provides that a person does not have "good moral character" if he was "confined" "to a penal institution for an aggregate period of one hundred and eighty days or more," and Luna-Reyes received a 180-day jail sentence for his DWI conviction, the IJ held that he was not entitled to relief. AR 117 (emphasis omitted). To the IJ, it was irrelevant for immigration purposes that New Jersey "classifies DWI as a 'violation' rather than a 'crime' and precludes the offense from giving rise to any criminal disabilities" within the state. AR 117.

Luna-Reyes appealed the IJ's decision to the BIA. The BIA reasoned that because Luna-Reyes's "180 days of confinement to a penal institution" and repeated drunk-driving offenses did not reflect a good moral character, he lacked a prerequisite for obtaining cancellation of removal. AR 7. Moreover, the BIA agreed with the IJ that Luna-Reyes's drunk-driving "conviction" occurred in a "genuine criminal proceeding," AR 4 (citation omitted), included "the constitutional safeguards normally attendant upon a criminal adjudication,'" AR 4 (quoting In re Eslamizar, 23 I. & N. Dec. 684, 687 (B.I.A. 2004) (en banc)); see also AR 5-6 (discussing the burden of proof, right to discovery, privilege against self-incrimination and shield of double jeopardy, right to appeal), and led to a punitive sanction. Like the IJ, the BIA did not find dispositive the

state-law classification for the offense or that he was not entitled to a jury trial or prosecution by indictment. For these reasons, the BIA dismissed Luna-Reyes's appeal. Luna-Reyes petitions for review.

II[1]

A

To qualify for cancellation of removal, Luna-Reyes must show, among other things, that he "has been a person of good moral character" during "a continuous period of not less than 10 years immediately preceding the date" of his cancellation application. 8 U.S.C. § 1229b(b)(1)(A), (B); Mendez-Moranchel v. Ashcroft, 338 F.3d 176, 177 (3d Cir. 2003). The INA provides:

> No person shall be regarded as . . . a person of good moral character who . . . was . . . confined, as a result of conviction, to a penal institution for an

---

[1] Luna-Reyes challenges the IJ's jurisdiction over his removal proceedings under 8 U.S.C. § 1229a based upon the fact that his notice to appear did not list a date and time for his hearing and seeks remand to the BIA to examine the IJ's jurisdiction. He contends that Pereira v. Sessions, 138 S. Ct. 2105 (2018), shows that such a deficiency may deprive the IJ of jurisdiction. Pereira held that a notice to appear lacking the time and place of the hearing does not trigger the stop-time rule for cancellation of removal relief. 138 S. Ct. at 2109-10. Pereira's holding, however, does not implicate the IJ's jurisdiction. Nkomo v. Att'y Gen., 930 F.3d 129, 134 (3d Cir. 2019). Because the lack of a date and time in a notice to appear does not impact the IJ's jurisdiction, Luna-Reyes's argument that jurisdiction never vested in the IJ fails and remand on this basis is unnecessary.

The BIA had jurisdiction to review the IJ's order of removal under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction under 8 U.S.C. § 1252.

We review de novo the BIA's legal determination that Luna-Reyes's DWI offense constituted a "conviction" under the INA. See Castillo v. Att'y Gen., 729 F.3d 296, 301 (3d Cir. 2013). We give no deference to the BIA's interpretation of a state criminal statute. Id. at 302.

4

aggregate period of one hundred and eighty days or more, regardless of whether the offense . . . for which he has been confined w[as] committed within or without such period[.]

8 U.S.C. § 1101(f)(7). The parties agree that Luna-Reyes was confined to a penal institution for 180 days but dispute whether his guilty plea for violating N.J. Stat. Ann. § 39:4-50 resulted in a "conviction" barring him from being a "person of good moral character." 8 U.S.C. § 1101(f).

Under the INA, a "conviction" is "a formal judgment of guilt of the alien entered by a court." § 1101(a)(48)(A). To determine whether a prior adjudication of guilt is a "conviction" under the INA, we use "an 'open-ended inquiry' as to whether the judgment of guilt was 'entered in a . . . genuine criminal proceeding.'" Gourzong v. Att'y Gen., 826 F.3d 132, 139 (3d Cir. 2016) (omission in original) (quoting Castillo, 729 F.3d at 307). Several factors guide this inquiry. Proof beyond a reasonable doubt is "a necessary but not sufficient condition for a proceeding to qualify as a 'genuine criminal proceeding.'" Id. at 139 n.4 (quoting Castillo, 729 F.3d at 307). We also consider: (1) "how the prosecuting jurisdiction characterized the offense at issue"; (2) "the consequences of a finding of guilt"; (3) "the rights available to the accused"; and (4) "any other characteristics of the proceeding itself." Id. at 139 (quoting Castillo, 729 F.3d at 307).

As a threshold matter, to secure a DWI conviction, the prosecution must prove the defendant's guilt beyond a reasonable doubt. State v. Robertson, 155 A.3d 571, 576 (N.J. 2017). Thus, a necessary condition for the proceeding to qualify as a "genuine criminal

5

proceedings" is satisfied. All but one of the remaining factors affirmatively demonstrate that a conviction for violating N.J. Stat. Ann. § 39:4-50 constitutes a conviction under the INA.

First, while New Jersey law characterizes DWIs under N.J. Stat. Ann. § 39:4-50 as "quasi-criminal matters,"[2] id. at 577; State v. Denelsbeck, 137 A.3d 462, 472 (N.J. 2016) (noting that a "DWI is 'not a crime under New Jersey law'" (quoting State v. Hamm, 577 A.2d 1259, 1261 (N.J. 1990)), this classification does not control whether a DWI is a "conviction" under the INA, cf. Acosta v. Ashcroft, 341 F.3d 218, 223 (3d Cir. 2003) (noting that a state "[l]egislature obviously cannot dictate how the term 'conviction' is to be construed under federal law").[3] Thus, this first factor is neutral.

Second, the consequences and penalties that flow from a third DWI conviction are more punitive than rehabilitative. See Gourzong, 826 F.3d at 139 n.5 (describing penalties associated with offense at issue as "prototypical of those imposed by criminal courts"). A "third or subsequent violator" of the DWI statute such as Luna-Reyes must

---

[2] Under New Jersey law, quasi-criminal offenses are "a class of offenses against the public which have not been declared crimes, but wrongful against the general or local public which it is proper should be repressed or punished by forfeitures and penalties." State v. Widmaier, 724 A.2d 241, 251 (N.J. 1999) (internal quotation marks and citation omitted).

[3] The dissent distinguishes Acosta on the basis that it "addressed the definition of conviction when an adjudication of guilt was withheld" by a plea of nolo contendere, while we must examine the definition of "conviction" when a "formal judgment of guilt" has been entered. Dissenting Op. 5-7. However, this distinction is immaterial to Acosta's instruction that a state legislature "cannot dictate how the term 'conviction' is to be construed under federal law." 341 F.3d at 223.

"be sentenced to imprisonment for a term of not less than 180 days in a county jail or workhouse, except that the court may lower such term for each day, not exceeding 90 days, served participating in a drug or alcohol inpatient rehabilitation program." Denelsbeck, 137 A.3d at 470 (emphasis omitted) (quoting N.J. Stat. Ann. § 39:4-50(a)(3)). A "third or subsequent violation" of the DWI statute also requires a $1,000 fine, a ten-year license suspension, mandatory installation of an interlock device, N.J. Stat. Ann. § 39:4-50(a)(3), and a $50 assessment, N.J. Stat. Ann. § 2C:43-3.1(c).[4] While the interlock device is a "preventative" measure, the 180-day jail sentence, $1,000 fine, and $50 assessment are deemed "criminal penalties." Denelsbeck, 137 A.3d at 474. Furthermore, while a DWI conviction is not included in criminal databases, it cannot be expunged, see State v. K.M., 532 A.2d 254, 255 (N.J. Super. Ct. App. Div. 1987), and it

_____

[4] Luna-Reyes relies on Hamm, which held that the "legislative and judicial history of DWI in New Jersey show[] both its consistent treatment as a non-criminal offense and progressive legislative emphasis on rehabilitation and prevention rather than punishment alone." 577 A.2d at 1269. Hamm, however, dealt with a statute no longer in effect. In 2016, the New Jersey Legislature "effectively replaced a largely non-custodial and treatment-based approach with one that more heavily emphasizes confinement," representing "an alteration of the Legislature's view of the penal consequences needed to address the scourge of intoxicated driving by third and subsequent offenders." Denelsbeck, 137 A.3d at 472. While the dissent highlights the imposition of the interlock device, contending that the penalties the Legislature added are "preventative rather than punitive," Dissenting Op. at 9-10 (quoting Denelsbeck, 137 A.3d at 474), the Denelsbeck Court warned that with the requirement of nearly six months' confinement, the state had "reached the outer limit of additional penalties that may be added for a third or subsequent DWI offense without triggering the right to a jury trial," and that the offense was "teetering between classifications," 137 A.3d at 475. Indeed, mandatory imprisonment marked a change from the previous version of the DWI statute, which otherwise permitted "noncustodial alternatives," id. at 470 (citation omitted), further demonstrating that the current statute is more punitive than rehabilitative.

may be "consider[ed] . . . as part of [a] defendant's overall personal history as well as pertinent to the risk that [the] defendant would commit another offense and the need for deterrence" for sentencing in later proceedings, State v. Lawless, 32 A.3d 562, 570 (N.J. Super. Ct. App. Div. 2011) (internal quotation marks and citation omitted).[5]

Third, DWI defendants have several procedural rights that are hallmarks of "genuine criminal proceeding[s]." Gourzong, 826 F.3d at 139. Specifically,

- a DWI defendant has appellate rights under N.J. Stat. Ann. § 39:4-50 from the municipal court, is "entitled to a trial de novo" in the Law Division, Robertson, 155 A.3d at 576, may seek further appellate review before the New Jersey Superior Court, Appellate Division, and may seek certification from New Jersey Supreme Court, id.; State v. Stas, 29 A.3d 741 (N.J. 2011) (mem.) (granting DWI defendant's petition for certification);

- the New Jersey Rules of Evidence apply in DWI trials, State v. Gibson, 98 A.3d 519, 527 (N.J. 2014);

- a DWI defendant has a right against self-incrimination, id.;

- a DWI defendant has a right to confrontation, id.; State v. Kent, 918 A.2d 626, 635, 638-40 (N.J. Super. Ct. App. Div. 2007);

- double jeopardy protection attaches to DWI proceedings,[6] see State v. Widmaier, 724 A.2d 241, 249-51 (N.J. 1999); and

---

[5] A DWI conviction also counts towards computing a defendant's criminal history under the federal Sentencing Guidelines. See U.S.S.G. § 4A1.2 cmt. 5 ("Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are always counted, without regard to how the offense is classified.").

[6] Luna-Reyes argues that the privilege against self-incrimination and the protection of double jeopardy apply in juvenile court proceedings in New Jersey, and since juvenile delinquency proceedings are not criminal proceedings, these two protections do not show that DWI proceedings are genuinely criminal. This argument lacks merit. As the BIA has explained, the petitioner's age, and not the procedural safeguards of the juvenile proceedings, is dispositive in holding that juvenile delinquency proceedings are not criminal. In re Devison-Charles, 22 I. & N. Dec. 1362, 1365 (B.I.A.

8

- a DWI defendant is entitled to discovery from the state, State v. Utsch, 446 A.2d 1236, 1238 (N.J. Super. Ct. App. Div. 1982).

This panoply of rights, typically present in criminal cases, shows that New Jersey's DWI prosecutions are "genuine criminal proceedings" under the INA.[7]

Luna-Reyes contends that the absence of a jury trial in a DWI case shows that it is not a genuine criminal proceeding. We disagree. The lack of a jury trial does not make a proceeding any less criminal. In fact, an entire "category of petty crimes or offenses . . . is not subject to the Sixth Amendment jury trial provision."[8] Lewis v.

---

2000) ("[A]cts of juvenile delinquency are not crimes."). The privilege against self-incrimination and double jeopardy protection remain unique constitutional safeguards in criminal proceedings. See United States v. Verdugo-Urquidez, 494 U.S. 259, 264 (1990); United States v. Dixon, 509 U.S. 688, 695-96 (1993).

[7] While the dissent argues that a DWI defendant's right on appeal to a trial de novo at which he retains the presumption of innocence "distinguishes" a DWI proceeding "from a criminal proceeding," Dissenting Op. 12, this distinction does not show that DWI prosecutions are not "genuine criminal proceedings." The focus on "the rights available to the accused" is on whether a defendant is "provide[d] the constitutional safeguards normally attendant upon a criminal adjudication," Castille, 729 F.3d at 307 (citation omitted), and not whether a defendant has additional rights and safeguards beyond those normally attendant upon criminal prosecutions. Furthermore, a DWI defendant enjoys the presumption of innocence, and all of the rights described herein, after adjudication in municipal court, as well as if he seeks a trial de novo. If he does not seek review, then he remains convicted of a DWI, just as a defendant found guilty in a "genuine criminal proceeding" would be.

[8] An offense is deemed a "petty offense" based upon "the maximum penalty attached to the offense." Lewis v. United States, 518 U.S. 322, 326 (1996). The penalty "reveals the legislature's judgment about the offense's severity." Id. The Supreme Court thus established a bright-line rule that "[a]n offense carrying a maximum prison term of six months or less is presumed petty, unless the legislature has authorized additional statutory penalties so severe as to indicate that the legislature considered the offense serious." Id.

<u>United States</u>, 518 U.S. 322, 325 (1996) (internal quotation marks and citation omitted).

A defendant sentenced to six months or less is not entitled to a jury trial. <u>Blanton v. City of North Las Vegas</u>, 489 U.S. 538, 543 (1989). The jury trial right applies only to prosecutions of serious offenses, not petty ones, <u>id.</u>, and the absence of a jury trial does not mean the offense is not a crime.[9]

Luna-Reyes also argues that lack of indictment by grand jury renders the proceedings non-criminal. This argument fails for at least three reasons. First, the right to indictment by grand jury does not apply to every offense. Under the United States Constitution, only "capital, or otherwise infamous crime[s]," such as felonies, trigger that right. U.S. Const. amend. V; <u>Ex Parte Wilson</u>, 114 U.S. 417, 427 (1885); <u>see also</u> <u>United States v. Goldstein</u>, 502 F.2d 526, 530 n.4 (3d Cir. 1974) (en banc) (noting that certain crimes may be prosecuted by information); Fed. R. Crim. P. 58(b)(1) (providing that the "trial of a misdemeanor may proceed on an indictment, information, or complaint" and that the "trial of a petty offense may also proceed on a citation or violation notice"). Second, because the Fifth Amendment right to grand jury indictment has not been incorporated and made binding on the states, <u>LanFranco v. Murray</u>, 313 F.3d 112, 118 (2d Cir. 2002), in some states, even offenses deemed more serious than DWI can proceed

---

[9] Indeed, while the dissent notes the fact that New Jersey's penalties for a third or subsequent DWI do not cause it to be considered "a 'serious' offense requiring a jury trial," Dissenting Op. at 11 (quoting <u>Denelsbeck</u>, 137 A.3d at 476), classification as "petty" rather than "serious," and the absence of a jury trial, is not indicative of whether an offense is a "crime."

without indictment, see, e.g., 234 Pa. Code Rule 556 (limiting indicting grand jury to certain offenses, thus allowing others to proceed without presentation to a grand jury). Finally, although the New Jersey Constitution generally provides that "[n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury," N.J. Const. art. 1, para. 8, the fact that New Jersey characterizes a DWI as quasi-criminal, for which the grand jury right does not attach, does not alone determine whether Luna-Reyes's guilty plea resulted in a "conviction" under federal immigration law, see Acosta, 341 F.3d at 223; Drakes v. Zimski, 240 F.3d 246, 248 (3d Cir. 2001).

Thus, the absence of the rights to a jury trial or to indictment by a grand jury does not change the fact that the procedural safeguards Luna-Reyes enjoys—proof beyond a reasonable doubt, the presumption of innocence, appellate rights, application of the New Jersey Rules of Evidence during trial, the privilege against self-incrimination, the right to confront witnesses, the protection of double jeopardy, and the right to discovery—demonstrate that his conviction was a judgment entered in a genuine criminal proceeding.[10]

---

[10] "Other characteristics," Gourzong, 826 F.3d at 139, of the DWI proceedings that Luna-Reyes notes do not change this conclusion. For example, Luna-Reyes asserts that because DWI is not a crime in New Jersey, a DWI cannot be used to impeach a witness. This restriction on evidentiary use, however, does not make the offense any less the subject of a genuine criminal proceeding. Indeed, evidence rules limit the types of crimes that can be used for impeachment. For example, Federal Rule of Evidence 609 generally allows only felonies and crimes involving falsity to be used for impeachment purposes. See United States v. Gilmore, 553 F.3d 266, 272 (3d Cir. 2009). This limitation, however, does not mean that all other offenses are not crimes. Thus, the inability to use a

In sum, the BIA correctly concluded that Luna-Reyes sustained a conviction for the purposes of the INA that reflected he lacked the "good moral character" required to be eligible for cancellation of removal, <u>Acosta</u>, 341 F.3d at 223, given that (1) New Jersey's classification of DWI offenses as "quasi criminal" is not dispositive; (2) conviction for a third DWI offense results in mandatory imprisonment and a fine; and (3) various procedural safeguards apply to DWI proceedings.

III

For the foregoing reasons, we will deny the petition for review.

---

DWI conviction for impeachment does not mean it does not constitute a conviction under the INA.

GREENAWAY, JR., *Circuit Judge*, Dissenting.

When is a conviction not a conviction? That question is the crux of this case. Appellant Roberto Luna-Reyes relies on our precedent to argue that he does not have a conviction that renders him ineligible for cancellation of removal. By misapplying our precedent, the majority incorrectly concludes that Luna-Reyes's admission of guilt to a third driving while intoxicated ("DWI") offense in municipal court in New Jersey satisfied the definition of conviction, as found in 8 U.S.C. § 1101(a)(48)(A), thus rendering him ineligible for cancellation of removal.

Our precedent, *Castillo v. Attorney General*, 729 F.3d 296 (3d Cir. 2013), requires us to consider "how the prosecuting jurisdiction characterized the offense at issue, the consequences of a finding of guilt, and the rights available to the accused as well as any other characteristics of the proceeding itself." *Id.* at 307. None of these factors as applied to Luna-Reyes allow any other conclusion but that his guilty plea to a DWI was not a conviction and cannot bar him from eligibility for cancellation of removal. Because I would grant the petition for review and remand for further proceedings, I am compelled to dissent.[1]

---

[1] I concur with the majority's conclusion regarding Luna-Reyes's jurisdictional argument.

1

## Background

To qualify for cancellation of removal, Luna-Reyes had to satisfy the requirements of 8 U.S.C. § 1229b(b)(1). That section provides that cancellation of removal can be granted if several conditions are satisfied. Relevant to our discussion, § 1229b(b)(1)(B) requires that "the alien . . . has been a person of good moral character during" the time he or she has been continuously physically present in the United States. 8 U.S.C. § 1229b(b)(1)(B).

An alien cannot be found to be of good moral character under subsection (B) if, during the period of continuous physical presence, the alien "has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period." 8 U.S.C. § 1101(f)(7).

Conviction is defined as

a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).

With that statutory framework in mind, we arrive at the problem facing Luna-

2

Reyes: does his conviction for a third DWI offense qualify as a conviction pursuant to § 1101(a)(48)(A)? Faithfully following our precedent in *Castillo*, the answer is a resounding "No."

**Discussion**

We must examine how the BIA and our court interpret § 1101(a)(48)(A) as that controls how we decide whether a conviction determines good moral character. When the BIA directed its attention to interpreting the definition of conviction in § 1101(a)(48)(A) in cases involving adjudications of guilt in criminal cases other than traditional felonies and misdemeanors, it found the definition of conviction in § 1101(a)(48)(A) to be not clear. *In re Eslamizar*, 23 I. & N. Dec. 684, 687 (B.I.A. 2004) (en banc). Given this lack of clarity, the BIA adopted

> a far more sensible reading of the statute . . .: namely, that by "judgment of guilt" Congress most likely intended to refer to a judgment *in a criminal proceeding*, that is, a trial or other proceeding whose purpose is to determine whether the accused committed a crime and which provides the constitutional safeguards normally attendant upon a criminal adjudication. Such a meaning, which we adopt, is consistent with the ordinary connotation of the term "guilt," especially in the context of a definition of the term "conviction."

*Id.* The BIA did not appear to require all constitutional safeguards, but "[r]ather . . . [found] that Congress intended that the proceeding must, at a minimum, be criminal in nature under the governing laws of the prosecuting jurisdiction, whether that may be in this country or in a foreign one." *Id.* at 688.

In *Castillo*, we were called upon to examine the BIA's precedent in *Eslamizar*

3

because "Castillo claim[ed] that the BIA violated its own precedent in *Eslamizar*."
*Castillo*, 729 F.3d at 305. We agreed with Castillo that, subsequent to its decision in *Eslamizar*, the BIA had applied its precedent in an "erratic, irreconcilable" manner. *Id.* at 310. In particular, we found that, in reviewing the underlying shoplifting offense in Castillo's case, the BIA had focused on the fact that New Jersey required proof beyond a reasonable doubt in that disorderly persons offense. We agreed with Castillo's position that "the more persuasive interpretation of *Eslamizar* and § 1101(a)(48)(A)" involved consideration of a series of factors, rather than only considering the burden of proof. *Castillo*, 729 F.3d at 305-06.

The factors we identified in *Castillo* are "how the prosecuting jurisdiction characterized the offense at issue, the consequences of a finding of guilt, and the rights available to the accused as well as any other characteristics of the proceeding itself." *Castillo*, 729 F.3d at 307.[2] However, we noted that, as part of the analysis, reasonable doubt is a necessary, but not the only, condition for an adjudication to satisfy the definition of conviction in § 1101(a)(48)(A). *Id.* "[W]e rejected a narrow approach that looked only to a single factor—namely, whether the conviction required proof of each element beyond a reasonable doubt—and, instead, adopted an 'open-ended inquiry' as to

---

[2] In *Castillo*, we remanded to the BIA so it could consider "New Jersey's then-operative characterization of the shoplifting offense, the consequences of any finding of guilt under New Jersey state law, and the rights available to the accused as well as the other characteristics of the proceeding before the East Brunswick Municipal Court." *Castillo*, 729 F.3d at 311.

4

whether the judgment of guilt was 'entered in a . . . genuine criminal proceeding.'"
*Gourzong v. Att'y Gen.*, 826 F.3d 132, 138-39 (3d Cir. 2016) (footnote omitted) (quoting *Castillo*, 729 F.3d at 307)).

The majority cites these factors, but then, rather than following the path set forth before it, strays from following this precedent. In part, the majority simply ignores the mandate set forth in *Castillo*. In addition, the majority misapplies the facts of this matter to our precedent.

**New Jersey law does not consider DWI to be a crime.**

The majority summarily casts aside the first factor – how the prosecuting jurisdiction characterized the offense at issue – commenting that New Jersey's view that DWI is not a crime "does not control whether a DWI is a 'conviction' under the INA." Maj. at 6. The majority reaches this baffling conclusion by relying on *Acosta v. Ashcroft*, 341 F.3d 218, 223 (3d Cir. 2003), a case that concerns an entirely different aspect of § 1101(a)(48)(A) and its interplay with state statutes.

Section 1101(a)(48)(A) defines conviction in the disjunctive. The first part of the definition of conviction is "a formal judgment of guilt . . . entered by a court," while the second part of the definition concerns instances where "adjudication of guilt has been withheld." 8 U.S.C. § 1101(a)(48)(A). *Acosta* addressed the definition of conviction when an adjudication of guilt was withheld, while *Castillo* concerned instances where a formal judgment of guilt was entered by a court.

5

In *Acosta*, the alien had pled nolo contendere to a charge of heroin possession in Pennsylvania and was sentenced to a one-year term of probation. Upon successful completion of his probation, "the charges against [Acosta] were ultimately dismissed without any adjudication of guilt." *Acosta*, 341 F.3d at 221. We concluded that these events were a conviction under the plain meaning of § 1101(a)(48)(A).[3]

Acosta argued that this conclusion was erroneous in light of the Pennsylvania statute under which he was sentenced, which provides in relevant part that "[u]pon fulfillment of the terms and conditions of probation, the court shall discharge such person and dismiss the proceedings against him. Discharge and dismissal shall be without adjudication of guilt and shall not constitute a conviction for any purpose whatever, including the penalties imposed for second or subsequent convictions." 35 PA. STAT. AND CONS. STAT. ANN. § 780-117(3).

We disagreed, observing that "since the Pennsylvania Legislature obviously cannot dictate how the term 'conviction' is to be construed under federal law, this language in Section 17 cannot on its own rescue Acosta from the definition of 'conviction' in INA § 101(a)(48)(A)." *Acosta*, 341 F.3d at 223. Essentially, we concluded that a state's mandate that, upon completion of certain conditions, an

---

[3] The terms of § 1101(a)(48)(A) were satisfied because "adjudication of guilt [was] withheld," Acosta "entered a plea of . . . nolo contendere . . . and . . . the judge ha[d] ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed." 8 U.S.C. § 1101(a)(48)(A).

6

individual's prior plea would no longer be a conviction for state purposes did not control the definition of conviction in § 1101(a)(48)(A).

Here, we are presented with an entirely different question – what did Congress mean by the phrase "formal judgment of guilt"?  The decisions in *Eslamizar* and *Castillo* address that exact question and set forth multiple factors we must consider in determining if a particular adjudication is, in fact, a "formal judgment of guilt."  We cannot ignore *Castillo's* requirement that we consider these factors – "how the prosecuting jurisdiction characterized the offense at issue, the consequences of a finding of guilt, and the rights available to the accused as well as any other characteristics of the proceeding itself."  729 F.3d at 307.

The majority disregards Congress's intent as it relates to my analysis of *Acosta* and *Castillo*.  Congress chose to provide two alternative definitions of conviction.  *Acosta* discussed one definition, while *Castillo* addressed the other.  The majority blithely states that this difference is "immaterial."  Maj. at n.3.  I disagree.  "Our task is to give effect to the will of Congress, and where Congress's will has been expressed in language that has a reasonably plain meaning, that language must ordinarily be regarded as conclusive." *Byrd v. Shannon*, 715 F.3d 117, 122 (3d Cir. 2013).  When, as here, Congress has decided to define a term in the disjunctive, we must honor that distinction.  Our two opinions do just that.  By trying to elide the two definitions, the majority ignores Congress's decision to the contrary.

Further, in emphasizing *Acosta's* comment that "the Pennsylvania Legislature obviously cannot dictate how the term 'conviction' is to be construed under federal law," *Acosta*, 341 F.3d at 223, the majority fails to provide the full context of this language. This observation neither contradicts nor overrides our holding in *Castillo*. Instead, it acknowledges that the Pennsylvania statute "cannot *on its own* rescue Acosta from the definition of 'conviction.'" *Id.* (emphasis added). *Castillo* does not demand that we only consider how the prosecuting jurisdiction characterizes the offense. Instead, *Castillo* directs us to consider how the prosecuting jurisdiction characterizes the offense as one of several factors when deciding whether an adjudication is a conviction as defined in § 1101(a)(48)(A).

Essentially, contrary to the majority's effort to elevate its significance, a single comment in *Acosta* cannot override *Castillo's* later holding that requires our consideration of how the prosecuting jurisdiction (here, the state of New Jersey) characterizes the offense.

Application of the first factor is straightforward: New Jersey does not consider a DWI offense to be a crime. *See, e.g., State v. Denelsbeck*, 137 A.3d 462, 472 (N.J. 2016) ("As was true when [*State v.*] *Hamm*[, 577 A.2d 1259 (N.J. 1990)] was decided, 'New Jersey has never recognized a right to trial by jury for the motor-vehicle offense of DWI' and DWI is 'not a crime under New Jersey law.'") (quoting *Hamm*, 577 A.2d at 1261)); *State v. Palma*, 99 A.3d 806, 813 (N.J. 2014) ("It is clear from the existing case law that

8

the Legislature and this Court have expressed an intent to keep motor vehicle violations separate and apart from criminal convictions."); *State v. Schreiber*, 585 A.2d 945, 947 (N.J. 1991) ("In sum, violation of a DWI statute is not a 'crime' in New Jersey.").

Based on these unambiguous statements, New Jersey does not consider DWI offenses to be crimes. Therefore, the first *Castillo* factor weighs in favor of finding Luna-Reyes's DWI adjudication to not be a conviction, as defined in § 1101(a)(48)(A).

**The sanctions for a DWI offense are directed at rehabilitation, not punishment.**

*Castillo* next directs us to consider "the consequences of a finding of guilt." 729 F.3d at 307. In addressing this issue, *Castillo* examined "whether the sanctions resulting from such a conviction are punitive." *Id.* at 305 (quoting Pet'r's Br. 20). The majority finds that "the consequences and penalties that flow from a third DWI conviction are more punitive than rehabilitative." Maj. at 7. This conclusion directly contradicts New Jersey's interpretation of its own laws.

The majority ignores New Jersey's view that the overarching purpose of the sanctions imposed in DWI cases is rehabilitation, rather than punishment. The New Jersey Supreme Court has observed that the Legislature "continues to address the problem [of drunk driving] with a measured response tempered by strong doses of rehabilitation and reparation." *Hamm*, 577 A.2d at 1263. Even after "the Legislature . . . amended the DWI statute to include additional penalties," the focus of the additional sanctions, which included use of an ignition interlock device, was "preventative rather

9

than punitive." *Denelsbeck*, 137 A.3d at 464, 474. Further, the majority of the fees and

fines imposed for a third DWI offense are civil, rather than criminal. *Id.* at 474.

After the legislature amended the DWI statute in 2004, the New Jersey Supreme

Court examined the revised statute in *Denelsbeck* and continued to view the sanctions as

rehabilitative rather than punitive, and not severe enough to require a trial by jury.[4]

Specifically, the Court observed that

> the legislative response to repeat DWI conduct has been to increase the
> severity of the penalties focused on prevention and deterrence, thereby
> creating a law that is far less punitive than those found in many other states.
> **It has resisted criminalizing this conduct except in separate criminal
> statutes addressing cases where a DWI offense results in bodily injury
> or death.** That approach reveals a legislative intent to blend punishment
> with deterrence, which runs counter to concluding that the current penalties
> assessed for third and subsequent DWI offenses have transformed DWI
> from a "petty" offense, or a quasi-criminal offense as we classify such

---

[4] Indeed, the Court recognized that the Legislature had modified the sanctions for a third DWI offense. However, those sanctions were not enough to convert the scheme from rehabilitation to punishment. As the Court observed,

> the State has also reached the outer limit of additional penalties that may be
> added for a third or subsequent DWI offense without triggering the right to
> a jury trial. Along with increasing the severity of the sentence in terms of
> confinement, it has added . . . fines . . . and has enacted new driving
> limitations through the ignition interlock device requirement. Although not
> all aspects of those changes are equally relevant, the offense is teetering
> between classifications, and any additional penalties will demonstrate that
> the Legislature views a third or subsequent DWI as a "serious" offense
> requiring a trial by jury. Until that day arrives, however, we believe that
> the penal consequences of the offense do not tip the balance to classify it as
> "serious."

*Denelsbeck*, 137 A.3d at 475.

conduct, to a "serious" offense requiring a jury trial.

*Id.* at 476 (emphasis added) (footnote omitted).

Additionally, the New Jersey Supreme Court has held that the Criminal Code sentencing factors do not apply when imposing a sentence for a motor vehicle violation. *Palma*, 99 A.3d at 813 (factors do not apply for careless driving); *State v. Moran*, 997 A.2d 210 (N.J. 2010) (factors do not apply for reckless driving). In addition, although a prior DWI conviction can be considered as part of a defendant's personal history, it does not count as part of a defendant's prior criminal record for purposes of sentencing. *State v. Lawless*, 70 A.3d 647, 653 n.2 (N.J. 2013).[5]

Given that the focus of the sanctions is rehabilitation, rather than punishment, and that the fines and fees are civil, rather than criminal, I conclude that this factor also weighs in favor of finding Luna-Reyes's adjudication does not satisfy the definition of conviction.

---

[5] I also note another somewhat unusual aspect of DWI adjudications in New Jersey. The New Jersey Supreme Court "read[s] the DWI statute for a third-time offender with one prior uncounseled DWI conviction to allow for the imposition of incarceration no greater than that for a second-time offender, i.e.[,] ninety days, and to allow for the imposition of the second-time offender requirement of thirty days of community service." *State v. Hrycak*, 877 A.2d 1209, 1218 (N.J. 2005). Essentially, "an uncounseled DWI conviction may not be used to enhance the period of incarceration for a subsequent offense." *Id.* at 1211. The record before us is not clear as to whether Luna-Reyes was represented by counsel in any of his DWI proceedings. If he was not represented by counsel in either of his first two proceedings, Luna-Reyes may have been sentenced incorrectly for his third DWI offense.

**Although New Jersey provides many constitutional protections in DWI proceedings, other characteristics of the proceeding distinguish it from a traditional criminal action.**

The third *Castillo* factor requires consideration of "the rights available to the accused as well as any other characteristics of the proceeding itself." 729 F.3d at 307. Although individuals accused of DWI offenses in New Jersey are not entitled to an indictment or a jury trial, *Denelsbeck*, 137 A.3d at 465, they do "enjoy[ ] a broad array of procedural rights. Those include the requirement that the State prove the elements of the crime beyond a reasonable doubt, a trial in accordance with the Rules of Evidence, the right against self-incrimination, and the right to confront the witnesses against him." *State v. Gibson*, 98 A.3d 519, 527 (N.J. 2014) (citations omitted).

While extensive, these rights are not identical to those rights available in a criminal proceeding. Examining only these rights, one might conclude that this factor was neutral, or even weighed in favor of finding Luna-Reyes's guilty plea satisfied the definition of conviction. However, a DWI municipal court proceeding has one other characteristic that distinguishes it from a criminal proceeding. The consequences of a finding of guilt in a municipal court proceeding differ from those of a finding of guilt in the Law Division. In determining "the appropriate standards for a stay of a driver's license suspension in a DWI case in two contexts: a judgment of the municipal court pending a trial de novo, and a determination by the Law Division pending appeal," the New Jersey Supreme Court emphasized the difference between the two proceedings.

12

*State v. Robertson*, 155 A.3d 571, 574 (N.J. 2017). After conviction in the municipal

court, an individual may appeal to the Law Division, where he or she receives a trial de

novo.

> The differences between DWI convictions in municipal court and the Law
> Division matter. After the first conviction, the stage is set for a new trial,
> where the defendant retains the presumption of innocence; after the second,
> a defendant loses the cloak of innocence and stands convicted—ready to
> challenge that determination on appeal.

*Id.* at 576.

The difference between the two stages of review are not implicated here since

Luna-Reyes pled guilty to all three of his DWI charges and did not appeal to the Law

Division. However, I, like the New Jersey Supreme Court, find the difference between

the two proceedings to be significant. Most important is the fact that an accused retains

the presumption of innocence after an adjudication in the municipal court. That

consequence is a substantial divergence from the consequence of a finding of guilt in a

typical criminal case, where, once the defendant is found guilty, the presumption of

innocence vanishes.

The majority dismisses this distinction because "[t]he focus on 'the rights

available to the accused' is on whether a defendant is 'provide[d] the constitutional

safeguards normally attendant upon a criminal adjudication,' and not whether a defendant

has additional rights and safeguards beyond those normally attendant upon criminal

prosecutions." Maj. at n.7 (quoting *Castillo*, 729 F.3d at 307 (citation omitted)). This

13

assertion glosses over the role the presumption of innocence plays in our criminal justice system.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976).[6] "Prior to conviction, the accused is shielded by the presumption of innocence, the 'bedrock[,] axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law.'" *Betterman v. Montana*, 136 S.Ct. 1609, 1614 (2016) (alterations in original) (quoting *Reed v. Ross*, 468 U.S. 1, 4 (1984)). But then the presumption is eliminated after trial, because "[t]he purpose of the trial stage from the State's point of view is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt." *Ross v. Moffitt*, 417 U.S. 600, 610 (1974). Reasonable doubt and the presumption of innocence are intertwined, since "[t]he reasonable-doubt standard . . . provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" *In re Winship*, 397 U.S. 358, 363 (1970) (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)).

Following an adjudication in municipal court, a DWI offender retains the

---

[6] "The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment." *Estelle*, 425 U.S. at 503.

entitlement to a presumption of innocence – a bedrock part of our criminal justice system. How then can we say the offender was found guilty beyond a reasonable doubt in a criminal proceeding? Based on this aspect of New Jersey law, I say we cannot.

Given that the rights available in a DWI proceeding incorporate some, but not all, of the rights available in a criminal proceeding and that the presumption of innocence persists after an adjudication of guilt in municipal court, I conclude that this factor weighs in favor of finding that Luna-Reyes's adjudication is not a conviction as defined in § 1101(a)(48)(A).

## **Conclusion**

Our precedent in *Castillo* directs us to consider how the prosecuting jurisdiction treats the underlying offense – how the offense is characterized, what the consequences are, what the rights provided by the jurisdiction are and any other characteristics of the proceeding. The majority does not do so. If they did, they would find, as I do, that all of the factors identified in *Castillo* weigh in favor of finding that an adjudication of guilt for a DWI offense in municipal court in New Jersey is not a conviction, as defined in § 1101(a)(48)(A). I would grant the petition for review and remand this case for further proceedings. I dissent.